[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 402.]

STRONGSVILLE BOARD OF EDUCATION ET AL., APPELLANTS, V. CUYAHOGA COUNTY BOARD OF REVISION; SCHURMER INVESTMENT COMPANY, APPELLEE.

[Cite as *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 1997-Ohio-8.]

*Taxation—Real property valuation of multi-building neighborhood shopping center—Board of Tax Appeals' valuation of property reasonable and lawful, when.*

(No. 95-2625--Submitted September 19, 1996--Decided February 5, 1997.)

APPEAL from the Board of Tax Appeals, Nos. 94-P-409, 94-P-410 and 94-P-421.

———————————

{¶ 1} Schurmer Investment Company, appellee, owns the Strongsville Towne Centre, a multi-building neighborhood shopping center located at Pearl and Schurmer Roads in Strongsville. (See Appendix.) Towne Centre includes two main buildings to the rear of the property, a smaller strip center to the front of the property, and two sit-down restaurants, also to the front of the property. Each of the main buildings is irregular in shape, and a cross-walk connects them. A grocery store anchors the South building, and a drug store anchors the North building. The front strip center contains five tenant spaces and has its own parking area. The two restaurant buildings are on outlots to the front of the property: one in the center and one on the corner opposite the strip center. Towne Centre does not contain basement space.

{¶ 2} The property has three entrances. The main, central entrance is on Pearl Road where Lunn Road terminates. A driveway running from this entrance passes the center, free-standing restaurant and continues between the two main buildings. The property has another entrance off Pearl Road; the driveway from this entrance passes the front strip center and continues into the main parking area.

The third entrance is off Schurmer Road, and the driveway from this entrance passes the other free-standing restaurant and continues into the main parking area. The main parking area services the entire Towne Centre.

{¶ 3} For the tax year 1991, the Cuyahoga County Auditor valued the property at $7,328,910. Schurmer filed a complaint with the Cuyahoga County Board of Revision ("BOR") claiming the value to be $6,175,000, and the city of Strongsville and the Strongsville Board of Education ("Strongsville"), appellants, filed a counter-complaint, claiming the value to be $9,000,000. The BOR determined the value to be $6,526,770. Schurmer and Strongsville each appealed this decision to the Board of Tax Appeals ("BTA").

{¶ 4} Strongsville presented the expert real estate appraisal testimony and report of Sam D. Canitia to the BTA. He testified that the highest and best use of the property was the existing use. He claimed that each building could be sold separately. Canitia, thus, valued each building as a separate economic unit, comparing each unit with smaller comparable properties in the income and market-data approaches. This analysis resulted in a higher per-square-foot value for the property and higher total value. Canitia, consequently, concluded that the true value of the property was $9,000,000.

{¶ 5} Schurmer presented the testimony and report of expert real estate appraiser Wesley Baker. Baker testified that the fair market value of the property was $6,800,000. Contrary to Canitia's theory, Baker treated the front strip center and the two main buildings as a single economic unit. Accordingly, he examined larger shopping complexes in his market-data approach. This resulted in a lower per unit value and a lower total value than Canitia's. Baker testified that each building could be sold separately; however, he did not think that such sales would be likely or feasible. Finally, he treated the two restaurants as individual economic units and valued them separately, as had Canitia.

**{¶ 6}** The BTA recognized the significance of delineating the economic units composing the property.  It pointed out that "[i]f the separate economic units comprising this tract are not correctly defined they will be improperly compared to other non-like kind properties. *** Unless the separate economic units from this tract are properly segregated, the resulting comparison will likely lead to an aberration in the final opinion of value."  After reviewing *Park Ridge Co. v. Franklin Cty. Bd. of Revision* (1987), 29 Ohio St.3d 12, 29 OBR 231, 504 N.E.2d 1116, and American Institute of Real Estate Appraisers, The Appraisal of Real Estate (10 Ed. 1992), the BTA ruled that the two restaurants should be valued separately, a point on which the appraisers had agreed.

**{¶ 7}** The BTA then valued the two main buildings as one shopping center. It found:

"*** The fact that they sit upon separate tax parcels does not effect the unity of purpose.  Nor does the fact that they are separated by a service drive.  Virtually all such shopping centers require a service drive, and the fact that in this case it happens to bisect the two buildings is of little consequence to the utility of these properties operating as a single shopping center unit.  The two buildings are connected by a common walkway.  The drug store anchor tenant in one building complements the food store anchor tenant in the other.  The parking lot and driveway areas are coordinated in the same manner as any other unified shopping center.  We believe these two buildings would be treated as a separate economic unit in the market place by those investors likely to purchase them."

**{¶ 8}** Since Baker had treated these buildings in this manner, and Canitia, who had selected much smaller properties for a comparison, had not, the BTA agreed with Baker. The BTA criticized other elements of Canitia's report, concluding that he had not supported his vacancy rate with market data and that he had not derived his capitalization rate from comparable transactions.

**{¶ 9}** However, the BTA found that the front strip center was not a part of the economic unit composed of the two larger buildings. The BTA found that this center was a separate economic unit or a sub-market of the larger unit. According to Baker's testimony, the smaller building had been operated under separate ownership until 1988 when Schurmer purchased it. Furthermore, it has a self-contained parking area, and its physical appearance and positioning sets it apart from the larger retail center. For these reasons, the BTA found Canitia's approach to be more credible but adopted the 1988 unit sale price in valuing the front strip center.

**{¶ 10}** As for the two restaurant buildings, the BTA gave Baker's valuations more credibility. The BTA grounded this conclusion on Baker's efforts to verify and confirm the market-approach results with a more detailed income-approach analysis.

**{¶ 11}** Consequently, the BTA adopted Baker's valuations for these restaurants. It determined the true value of Towne Centre to be, as of January 1, 1991:

| | |
|---|---|
| Large shopping center | $5,276,350 |
| Strip center | $ 610,650 |
| Corner restaurant | $ 450,000 |
| Center restaurant | $ 650,000 |
| Total | $6,987,000. |

**{¶ 12}** The cause is now before this court upon an appeal as of right.

————————————

*Kolick & Kondzer, Daniel J. Kolick* and *John P. Desimone*, for appellants.

*Fred Siegel Co., L.P.A.*, and *Annrita S. Johnson*, for appellee.

————————————

4

***Per Curiam.***

**{¶ 13}** Strongsville, first, argues that the BTA should have valued the two main shopping buildings as individual shopping centers. It claims that each building is an economic unit and that the BTA should have sought the highest possible value for the complex. We disagree.

**{¶ 14}** In *Park Ridge Co. v. Franklin Cty. Bd. of Revision, supra*, paragraph two of the syllabus, we stated:

"The true value for real property may well depend on its potential use as an economic unit. That unit may include multiple parcels, or it may be a part of a larger parcel, on the auditor's records. The boundaries of that unit may change with time and circumstances. Thus, a separate tract for valuation purposes need not correspond with a numbered parcel. For tax valuation purposes, property with a single owner, for which the highest and best use is a single unit, constitutes a tract, lot, or parcel."

**{¶ 15}** *Park Ridge* concluded that "whether the property serves its highest and best use as a single unit or as multiple units is generally a factual issue." *Id*. at 16, 29 OBR at 234, 584 N.E.2d at 1120. *Park Ridge* continued to state that these factual questions rest within the sound discretion of the BTA. However, we have since clarified the BTA's role as to its findings and our appellate review of such findings. In *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 157, 573 N.E.2d 661, 662-663, we stated:

"This court has consistently held that '[t]he BTA need not adopt any expert's valuation. It has wide discretion to determine the weight given to evidence and the credibility of witnesses before it. Its true value decision is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. ***' (Citation omitted.) R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 557 N.E.2d 874, 877. See, also*, Cardinal Federal S. & L. Assn. v. Cuyahoga Cty.*

*Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O. 2d 83, 336 N.E. 2d 433, at paragraphs three and four of the syllabus; *Crow v. Cuyahoga Cty. Bd. of Revision* (1990), 50 Ohio St.3d 55, 57, 552 N.E. 892, 893-894. Moreover, this court 'will not overrule BTA findings of fact that are based upon sufficient probative evidence.' *R.R.Z. Assoc., supra*, 38 Ohio St.3d at 201, 527 N.E.2d at 877."

{¶ 16} We will reverse BTA decisions on ultimate factual conclusions because these conclusions are legal in nature. *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 613 N.E. 2d 1037*; Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision* (1966), 75 Ohio St.3d 552, 664 N.E.2d 922.

{¶ 17} Consequently, we affirm the BTA's basic factual findings if sufficient, probative evidence of record supports these findings. We also affirm the BTA's rulings on credibility of witnesses and weight attributed to evidence if the BTA has exercised sound discretion in rendering these rulings. Finally, we affirm the BTA's findings on ultimate facts, *i.e.*, factual conclusions derived from given basic facts, *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171-172, 249 N.E.2d 892, 895-896, if the evidence the BTA relies on meets these above conditions, and our analysis of the evidence and reading of the statutes and case law confirm its conclusion. After meeting all these prerequisites, the BTA's decision would, thus, be reasonable and lawful, pursuant to R.C. 5717.04.

{¶ 18} After our analysis of the evidence here, we agree with the BTA's finding that the two main buildings are one economic unit, which is an ultimate fact. Baker appraised the two buildings as one economic unit. He testified that the type of buildings and tenants and the cash flow the buildings generated caused them to be one unit. Thus, sufficient, probative evidence supports the basic facts. Further, we agree with the BTA's logic in reaching its finding on this ultimate fact. Schurmer operates the main buildings as a balance for each other because the drugstore, anchor tenant in one building, complements the grocery, anchor tenant

in the other. The parking lot and driveway areas serve both buildings, which are connected by a crosswalk. Further, we note a single owner operates the two buildings conjunctively. Thus, the BTA correctly decided this fact.

{¶ 19} Next, Strongsville argues that the rents the BTA adopted were not market rents because they were the actual rents paid under out-of-date leases. Again, we disagree with Strongsville.

{¶ 20} Baker had employed actual rents as market rents to process his income approach. He concluded that Towne Centre was a properly managed shopping center receiving market rents, and the BTA approved of this. The record supports the BTA's conclusion. Baker, an expert real estate appraiser, testified that, despite the leases having some age, the step increases rendered the actual rents to be economic rents. This reliable and probative evidence supports the BTA's finding of basic facts, and logic supports the ultimate fact that the rents this properly managed shopping center received were market rents.

{¶ 21} Finally, Strongsville claims that the BTA's decision is not based upon probative and credible evidence. It then recites a litany of errors it alleges the BTA committed.

{¶ 22} What we said in *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E.2d 50, 52, applies equally here:

"A great deal of appellants' argument is devoted to the rebuttal of appellees' expert's testimony. Ultimately they conclude that none of his conclusions is credible enough to be relied on by the BTA. However, such a determination is precisely the kind of factual matter to be decided by the BTA. It is clear from the record that the BTA's final determination represented a compromise between the conflicting positions of the two experts. *** There is no indication on the face of the record of any abuse of discretion, nor have appellants proven any violation by the BTA, which would render the decision unreasonable or unlawful." See, also,

*Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 601, 603, 665 N.E.2d 194, 196.

{¶ 23} Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————