**[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 496.]**

COLUMBUS CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.*

ZAINO ET AL., APPELLEES.

**[Cite as *Columbus City School Dist. Bd. of Edn. v. Zaino*, 2001-Ohio-5.]**

*Taxation—Real property valuation—Exemptions—Board of Tax Appeals'*
*determination that property was exempt as public property reversed when*
*title to property was not vested directly in state or one of its subdivisions*
*or by some person holding exclusively for the benefit of the state.*

(No. 99-1740—Submitted November 29, 2000—Decided January 3, 2001.)

APPEAL from the Board of Tax Appeals, No. 97-A-249.

*Per Curiam.*

{¶ 1} In 1986, the city of Columbus passed Ordinance 1891-86 authorizing the mayor to enter into an agreement with appellant, I-670 Corridor Development Corporation ("I-670"), designating I-670 "an agency and instrumentality for economic development including land use planning and marketing strategy," for a designated area. I-670 is a private, not-for-profit corporation under R.C. Chapter 1702, and a 501(c)(3) corporation under the Internal Revenue Code.

{¶ 2} I-670 and the city entered into a loan agreement in 1990 whereby the city loaned I-670 money to purchase property for a mixed-use business park. Using this money, I-670 purchased 14.92 acres of land near Joyce Avenue and Bliss Street in Columbus from the Consolidated Railway Corporation in 1992. I-670 took title to the property in its own name. After constructing streets and sewers, I-670 sold this property in 1996.

{¶ 3} In 1995, I-670 filed an application with the appellee Tax Commissioner, seeking real property tax exemption for this property for tax year 1995 and remission of taxes for 1993 and 1994.

**{¶ 4}** The Tax Commissioner granted the exemption and remission under R.C. 5709.08. However, the Columbus Board of Education ("BOE"), appellant, appealed the Tax Commissioner's decision to the Board of Tax Appeals ("BTA").

**{¶ 5}** The BTA found that "the property in question was acquired by I-670 Corporation in its capacity as an agent and instrumentality of the city of Columbus, per Columbus City Ordinance No. 1891-86." The BTA found that the "property in question constitutes public property." The BTA also found the property to be used exclusively for a public purpose and therefore affirmed the Tax Commissioner's decision.

**{¶ 6}** The cause is now before this court upon an appeal as of right.

**{¶ 7}** The BTA exempted this property under R.C. 5709.08, which provides: "Real or personal property belonging to the state or United States used exclusively for a public purpose, and public property used exclusively for a public purpose, shall be exempt from taxation."

**{¶ 8}** For property to be exempt under R.C. 5709.08, (1) it must be public property, (2) it must be used for a public purpose, and (3) the use must be exclusively for a public purpose. *Carney v. Cleveland* (1962), 173 Ohio St. 56, 18 O.O.2d 256, 180 N.E.2d 14, paragraph one of the syllabus.

**{¶ 9}** The BOE contends that the property owned by I-670 is not public property. We agree.

**{¶ 10}** In reviewing decisions of the BTA, we determine whether the BTA's decision is reasonable and lawful. *Summit United Methodist Church v. Kinney* (1983), 7 Ohio St.3d 13, 15, 7 OBR 406, 407, 455 N.E.2d 669, 670. We stated our role in *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 405, 674 N.E.2d 696, 699:

"[W]e affirm the BTA's basic factual findings if sufficient, probative evidence of record supports these findings. We also affirm the BTA's rulings on credibility of witnesses and weight attributed to evidence if the BTA has exercised

sound discretion in rendering these rulings. Finally, we affirm the BTA's findings on ultimate facts, *i.e.*, factual conclusions derived from given basic facts, *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171-172, 249 N.E.2d 892, 895-896, if the evidence the BTA relies on meets these above conditions, and our analysis of the evidence and reading of the statutes and case law confirm its conclusion."

{¶ 11} Ordinance 1891-86, appointing I-670 an agent of the city, sets forth the agreement of the parties. Paragraph two of the agreement states that I-670 "will constitute and act as an agent of the City for overall economic development including land use planning and marketing strategy within its territorial jurisdiction." Paragraph three states that the purpose of having designated I-670 an agent is "(A) to create jobs and employment opportunities and to improve the economic welfare of the people of the City and the State of Ohio; (B) to encourage and cause the maintenance, location, relocation, construction, expansion, modernization and equipment of sites, buildings, structures and appurtenant facilities for industrial, commercial distribution and research activities * * *; and (C) to maintain and increase the tax valuation of property located therein in order that tax revenues may be available to provide services     * * *."

{¶ 12} Paragraphs four through sixteen set forth agreements dealing with I-670's powers and duties. I-670 was to make recommendations for actions to be taken in aid of development, including: "the location, relocation, construction, extension, modernization, modification or improvement of public utility or municipal facilities or services." In addition, I-670 was authorized to advertise; solicit businesses to relocate to the area; serve as a clearinghouse for information; "initiate, review, and recommend criteria and programs for the preservation, development and enhancement" of the area; recommend priorities for government services in the I-670 area; and meet with applicants for permits.

**{¶ 13}** While the ordinance appoints I-670 an agent for the city for certain express purposes, it does not appoint I-670 an agent for all purposes. In particular, the ordinance does not authorize I-670 to act as an agent for the purchase of real property. In *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 574, 575 N.E.2d 817, 820, we quoted the following passage from *Stevens v. Frost* (1943), 140 Me. 1, 7, 32 A.2d 164, 168: " 'Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred.' "

**{¶ 14}** The question of whether I-670 acted as an agent for the city in the purchase of the property is a question of ultimate fact. In *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 604-606, 613 N.E.2d 1037, 1039-1040, we reversed a BTA finding on an ultimate fact because the given basic facts did not support the finding on this ultimate fact. Likewise in this case, the BTA's inference of ultimate fact that I-670 acted as the city's agent when it purchased the property is not supported by the basic facts. There is no evidence that the city authorized I-670 to act as its agent for the purchase and sale of the property in question.

**{¶ 15}** For property to be considered public property under R.C. 5709.08 requires that there be ownership "by the state or some political subdivision thereof, and title to which is vested directly in the state or one of its political subdivisions, or some person holding exclusively for the benefit of the state." *Dayton Metro. Hous. Auth. v. Evatt* (1944), 143 Ohio St. 10, 27 O.O. 557, 53 N.E.2d 896, paragraph one of the syllabus. The requirement that the property be public property has not been met here. Title to the property in question was not vested directly in state or one of its subdivisions or by some person holding exclusively for the benefit of the state.

**{¶ 16}** Accordingly, we hold that the decision of the BTA is unreasonable and unlawful, and it is hereby reversed.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

COOK, J., concurs in judgment only.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 17}** The majority holds that the property in question is not exempt from taxation as "public property" under R.C. 5709.08 because "[t]here is no evidence that the city authorized I-670 to act as its agent for the purchase and sale of the property in question." I disagree.

**{¶ 18}** I believe that I-670 draws its authority to purchase and sell property as the city's agent not only from its agreement with the city, but from the agreement's enabling ordinance as well.

Ordinance 1891-86

**{¶ 19}** The city enacted Ordinance 1891-86 to authorize it to enter into an agreement with I-670, which charged I-670 with the responsibility of promoting economic development in the I-670 corridor. The ordinance authorized I-670 to carry out the following purposes and duties:

"Whereas, Section 13 of Article VIII of the Ohio Constitution provides that, to create jobs and employment opportunities and to improve the economic welfare of the people of the State, it is in the public interest and a proper public purpose for a municipal corporation, its agents or instrumentalities, or a corporation not for profit designated by such municipal corporation as its agent or instrumentality to perform the acts and exercise the power therein provided; and

" * * *

5

"Whereas, the Articles of Incorporation of the I-670 Corridor Development Corporation sets [*sic*] forth that its purpose is as follows:

" 'To promote the general and public welfare of the residents of the City of Columbus, Ohio * * * by the enhancement and development of all or part of that area of the corridor * * *.

" 'To *take and hold by * * * purchase * * ** for any of its purposes, *any property*, real or personal, without limitation as to amount or value; *to sell*, convey and dispose of *any such property * * ** for any of the purposes hereinbefore set forth.' " (Emphasis added.)

**{¶ 20}** Pursuant to this ordinance, the city and I-670 entered into an agreement whereby I-670 was to encourage economic development in the I-670 corridor. This court has held that "[a] contract made in pursuance of a statute or resolution, must be construed as though such statute or resolution had been incorporated into such contract." *Banks v. De Witt* (1884), 42 Ohio St. 263, at paragraph two of the syllabus. Pursuant to *Banks*, I would find that Ordinance 1891-86 should be incorporated into the agreement between the city and I-670. Therefore, because Ordinance 1891-86 authorized I-670 to buy and sell property, I would find that agreement likewise authorized I-670 to buy and sell property for purposes of encouraging economic development in the I-670 corridor.

The Agreement

**{¶ 21}** The majority finds that paragraphs four through sixteen define I-670's powers and duties. In examining those paragraphs, the majority finds that the agreement fails to authorize I-670 to act as the city's agent to buy and sell property.

**{¶ 22}** I believe that paragraphs one and two of the agreement, omitted from the majority's analysis, further define I-670's power and duties. Paragraphs one and two read:

"Whereas, in the public interest and *for the public purposes authorized by Section 13 of Article VIII of the Constitution* of the State of Ohio, * * * the *City of Columbus * * * has designated I-670* Corridor Development Corporation * * * *as an agency and instrumentality for the economic development * * ** within the Corporation's defined jurisdiction, and

"Whereas, the city and the Corporation desire to enter into an agreement in *furtherance of the purposes hereinbefore set out* and to provide the extent to which the Corporation shall participate as an agent and instrumentality of the City." (Emphasis added.)

{¶ 23} I also believe that this language incorporates those "public purposes" set out in Section 13, Article VIII of the Ohio Constitution into the agreement by reference.

{¶ 24} Section 13, Article VIII of the Ohio Constitution states:

"*To create or preserve jobs and employment opportunities, * * ** it is hereby determined to be in the public interest and a proper *public purpose* for the state or its political subdivisions * * * or their agencies or instrumentalities * * * *to acquire * * * and to sell * * * property * * ** within the State of Ohio for industry, commerce, distribution, and research * * *." (Emphasis added.)

{¶ 25} Where one instrument incorporates another by reference, both must be read together. *Christe v. GMS Mgt. Co.* (1997), 124 Ohio App.3d 84, 88, 705 N.E.2d 691, 693. With the public purposes of Section 13 incorporated into the agreement, it is evident that the agreement authorized I-670 to purchase and sell property for the purpose of promoting employment opportunities in Ohio.

Public Policy

**{¶ 26}** Although the argument is not addressed in the majority opinion, appellant, the board of education, in its brief, expresses concern that allowing the exemption in this case will set a standard that will allow any city in Ohio to grant a "tax exemption to *any* and *all* land belonging to a private developer merely by executing an 'agreement' with the developer." (Emphasis added.) I believe that the board's concerns are completely unfounded.

**{¶ 27}** The Ohio Constitution indicates that economic development is a "public purpose." Section 13, Article VIII of the Ohio Constitution. In order to encourage public property to be used for "public purposes," including the encouragement of economic development, the General Assembly has exempted such property from taxation. R.C. 5709.08. This "public purposes" limitation is imposed not only on a political subdivision's use of property in order to qualify the property for tax-exempt status, but also any agent's use of the property. Accordingly, there is no merit to the school board's argument that finding this property to be tax exempt will allow cities to make an agreement with a private entity that will exempt all its property from taxation because only property used for a *public purpose* will be exempt.

**{¶ 28}** The purpose of the tax exemption here is to encourage development of public purpose projects by allowing more dollars to remain in the project. Although I-670 is a private entity, it is a nonprofit entity that was created to be an agent of the city of Columbus. Its sole purpose is to promote the economic development of the I-670 corridor, which is a public purpose. See *Canton v. Limbach* (Mar. 13, 1992), BTA No. 890-E-431, unreported; *Tiffin v. Tracy* (Mar. 25, 1994), BTA No. 92-X-1022, unreported. The funds supplied by the city to I-670 to purchase the property in question were in the form of low-interest loans. To deny the tax exemption would in effect tax the city's own money that was earmarked to spur the economic development of the I-670 corridor. That, in effect,

8

would reduce the amount of funding available for the public purpose of revitalizing the economy in the I-670 corridor. Taxing the property in question simply shifts government dollars from one category (development of I-670 corridor) to another (public schools). That would run contrary to the intent of R.C. 5709.08 and Section 13, Article VIII of the Ohio Constitution.

## Conclusion

{¶ 29} For all of the aforementioned reasons, I believe that I-670, as the city's agent, had the authority to purchase and sell the property in question, and therefore the property should have been exempt from taxation as property that was used for a public purpose pursuant to R.C. 5709.08. Accordingly, I would find the decision of the BTA reasonable and lawful.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

*Teaford, Rich, Crites & Wesp, Jeffrey A. Rich* and *James R. Gorry,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Phyllis J. Shambaugh,* Assistant Attorney General, for appellee Thomas M. Zaino.

_____