O’Donnell, J.,
dissenting.
{¶ 48} While I concur with the majority’s conclusion that no minimum percentage of unreimbursed care is required in order to qualify for a charitable-use exemption, I disagree with the majority’s determination that Dialysis Clinic, Inc. (“DCI”) is not entitled to the exemption on the ground that it does not provide service in a nondiscriminatory manner because it reserves the right to refuse treatment to indigent patients in its effort to comply with Medicare regulations. The reservation of the right to refuse treatment is not proof that DCI denies services to indigents. To the contrary, the evidence shows that DCI provides services to all patients, irrespective of their ability to pay. Because providing service to indigent patients is a charitable act, in my view, DCI qualifies as a charitable institution and is tax exempt. Moreover, because DCI provides services at the West Chester clinic, the clinic is used exclusively for charitable purposes, and the property is exempt from tax. Accordingly, I assert that the determination by the Board of Tax Appeals (“BTA”) denying DCI a charitable-use tax exemption was unreasonable and unlawful.
Facts
{¶ 49} DCI is a nonprofit entity that is tax exempt under Section 501(C)(3) of the Internal Revenue Code; it provides dialysis services to patients who suffer from end-stage renal disease, and it allocates half its excess revenue to support kidney research and the other half to subsidize its own services. DCI’s charter[5] explicitly prohibits it from operating for “pecuniary gain or profit.”
{¶ 50} Although many of DCI’s patients are covered by Medicare or Medicaid, some patients remain responsible for 20 percent of the services rendered. However, when a patient is indigent and DCI is unable to collect a copayment or deductible, DCI writes off the portion that the patient is unable to pay as a bad-debt expense, eliminating the patient’s responsibility to pay. In addition, DCI claimed that it would provide care without charge to patients who are ineligible for or are waiting to qualify for Medicare or Medicaid. In its efforts to comply with Medicare regulations that prohibit a clinic from providing services to non-Medicare patients at a fee lower than the one charged to Medicare patients, DCI established a policy reserving the right to refuse treatment to those who cannot *228 pay. An administrator with DCI testified that DCI does not deny services to individuals “with no means to pay.” The record does show that DCI provides services to indigent patients and adjusts the balance as a “Non-contracted Write-off’ if patients do not have insurance coverage. As DCI staff attorney William Horn testified before the BTA, “if there are not payment sources, then [service] ends up being free to [patients] if they have no sources to pay.”
Law and Analysis
{¶ 51} Our standard of review for appeals from the BTA is whether its decisions are “ ‘reasonable and lawful.’ ” Satullo v. Wilkins, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting Columbus City School Dist. Bd. Of Edn. v. Zaino (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. This court “ ‘will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.’ ” Id., quoting Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789.
{¶ 52} In this case, DCI sought an Ohio charitable use tax exemption pursuant to R.C. 5709.12(B) and 5709.121(A)(2). In Bethesda Healthcare, Inc. v. Wilkins, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 27, we quoted approvingly from the concurring opinion of Justice Stern in White Cross Hosp. Assn. v. Bd. of Tax Appeals (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 311 N.E.2d 862, which stated that “ ‘any institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption [pursuant to R.C. 5709.12(B)] if it is making exclusive charitable use of its property.’ ” (Emphasis sic.) On the other hand, “R.C. 5709.121 does not itself grant any exemption. It merely sets forth certain situations in which real and personal property belonging to charitable or educational institutions * * * may be considered as used exclusively for charitable * * * purposes.” First Baptist Church of Milford v. Wilkins, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 16. In evaluating an entity’s charitable status, this court examines the charitable activities of the taxpayer; in evaluating a property’s charitable use, this court examines the charitable activities that occur on the property. See OCLC Online Computer Library Ctr., Inc. v. Kinney (1984), 11 Ohio St.3d 198, 201, 11 OBR 509, 464 N.E.2d 572 (activities of the taxpayer); Highland Park Owners, Inc. v. Tracy (1994), 71 Ohio St.3d 405, 406-407, 644 N.E.2d 284 (activities undertaken at the property).
{¶ 53} In Church of God in N. Ohio, Inc. v. Levin, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 19, we explained that “the provision of medical or ancillary healthcare services qualifies as charitable if those services are provided on a nonprofit basis to those in need, without regard to race, creed, or ability to pay.” Id., citing Vick v. Cleveland Mem. Med. Found. (1965), 2 Ohio St.2d 30, 31 O.O.2d 16, 206 N.E.2d 2, paragraph two of the syllabus.
*229 {¶ 54} In denying DCI’s application for a charitable use exemption, the BTA concluded that DCI does not conduct any charitable activity at its West Chester clinic because it “charges all patients for dialysis services, voluntarily enters contracts with government and private insurers to set charges for the provision of these services, and does not donate any of its services without charge or at a reduced charge.” Dialysis Clinic, Inc. v. Levin (Nov. 24, 2009), BTA No. 2006-V-2389, at 13. After noting DCI’s reservation of its right not to treat indigent patients, the BTA concluded that DCFs practice of writing off uncollectible debt does not constitute charity, noting that it could find “no evidence of DCI acting as a donor at any time by relinquishing its legal right to payment from patients for services provided.” Id. at 14. According to the BTA, “DCI is not providing its services without an expectation that it will be compensated” by Medicare, Medicaid, or a private insurer and has not shown that it provided a requisite amount of unreimbursed care to be deemed a charitable institution.
{¶ 55} While I agree with the majority that the BTA erroneously determined that a taxpayer must demonstrate a minimum threshold or percentage of unreimbursed care to qualify as a charitable institution, I would further maintain that DCI engages in charitable activities and qualifies as a tax-exempt charitable institution. DCI’s reservation of the right to refuse treatment to indigent patients does not defeat its charitable status. The evidence shows that DCI does not exercise this right but instead treats any patient regardless of the ability to pay and writes off any charges that insurance does not cover.
{¶ 56} In my view, the conclusion of the Board of Tax Appeals that DCI does not engage in charitable activities because it reserves the right to refuse to treat indigent patients unduly restricts the definition of “charity” in a manner inconsistent with our previous interpretation of the term. In accordance with our caselaw, DCI is charitable if it operates on a nonprofit basis and does not turn away individuals because of their inability to pay. Contrary to the BTA’s conclusions, the charitable status of a nonprofit entity is not defeated because the entity reserves the right to refuse to treat an indigent individual when the institution treats all individuals regardless of ability to pay and does not collect payment from those who cannot pay. In other words, reserving the right to deny treatment is not the same as denying treatment or collecting payment from indigent individuals. See Taylor v. Meridia Huron Hosp. of Cleveland Clinic Health Sys. (2000), 142 Ohio App.3d 155, 157, 754 N.E.2d 810 (“reserving a right is not the same as actually exercising that right”); Barker v. Geotech Servs., Inc., 9th Dist. No. 22742, 2006-Ohio-3814, 2006 WL 2060556, ¶ 8 (same); see generally Gowdy v. United States (C.A.6, 1969), 412 F.2d 525, 529 (government’s reservation of the right to inspect the work of an independent contractor does not impose a duty on the government to exercise the right); Rawson v. Brown (1922), 104 *230 Ohio St. 537, 547, 136 N.E. 209 (the rights of parties to a purchase option contract were not affected until the option was exercised).
Dinsmore & Shohl, L.L.P., Sean Callan, Seth Schwartz, and Sarah Herron, for appellant.
Richard Cordray, Attorney General, and Ryan P. O’Rourke, Lawrence D. Pratt, and Alan P. Schwepe, Assistant Attorneys General, for appellee.
Jones Day, Chad A. Readier, and Eric E. Murphy, urging reversal for amicus curiae Ohio Hospital Association.
Brindza, McIntyre & Seed, L.L.P., David H. Seed, and Daniel McIntyre, urging affirmance for amici curiae Ohio School Boards Association, Ohio Association of School Business Officials, Buckeye Association of School Administrators, Ohio Job and Family Services Directors Association, County Commissioners Association of Ohio, Ohio Association of County Behavioral Health Authorities, Ohio Municipal League, Ohio Fire Chiefs Association, Ohio Parks and Recreation Association, Ohio Township Association, and Ohio Library Council.
{¶ 57} Because there is no evidence in the record that DCI denies services to patients who cannot afford to pay and there is evidence that DCI writes off any charges incurred by patients who cannot pay, it is my view that DCI has established that it provides services “to those in need, without regard to * * * ability to pay” and therefore qualifies as a charitable institution pursuant to R.C. 5709.121(A). See, e.g., Vick, 2 Ohio St.2d 30, 33, 31 O.O.2d 16, 206 N.E.2d 2 (the hospital did not lose its charitable status, because “[n]o one ha[d] ever been refused admittance to the hospital on the basis of race, creed, color or inability to pay”). Further, because the West Chester clinic provides the same services in the same manner as DCI, I believe that the clinic is used “exclusively for charitable purposes” pursuant to R.C. 5709.12(B).
{¶ 58} Because DCI qualifies as a charitable institution and the West Chester clinic is used exclusively for charitable purposes, it should qualify for a tax exemption pursuant to R.C. 5709.12(B) and 5709.121(A). Thus, I maintain that the BTA acted unreasonably and unlawfully when it denied the request for exemption. Accordingly, I would reverse the decision of the BTA.
Pfeifer and Lundberg Stratton, JJ., concur in the foregoing opinion.

. DCI is a Tennessee corporation, and its charter is the equivalent of articles of incorporation. See Tennessee Department of State, Filing Guide, Nonprofit Corporations, http://www.state.tn.us/sos/ forms/fg-np.pdf (accessed October 6, 2010).