[Cite as *Crosier v. Dept. of Rehab. & Corr.*, 2018-Ohio-820.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Heather Crosier, | : | |
| Appellant-Appellant, | : | No. 17AP-4 |
| | | (C.P.C. No. 15CV-7089) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

---

# D E C I S I O N

## Rendered on March 6, 2018

---

**On brief**: *Daniel H. Klos*, for appellant. **Argued**: *Daniel H. Klos*.

**On brief**: *Michael DeWine*, Attorney General, and *Joseph N. Rosenthal*, for appellee. **Argued**: *Joseph N. Rosenthal*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} Appellant, Heather Crosier, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("SPBR"), which affirmed an order from appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), terminating appellant's employment with ODRC. For the reasons that follow, we affirm.

{¶ 2} Appellant was employed by ODRC as a program administrator 2 in ODRC's Corrections Training Academy (the "Academy"). Pursuant to her employment, appellant

was a member of the classified civil service. Dr. Tracy Reveal was the superintendent of the Academy, and the highest level official in appellant's chain of command.

{¶ 3} The Academy, located in Orient, Ohio, is the "centralized point within which all of the new [ODRC] employees" come for their "basic training." (Tr. at 39.) The Academy also provides in-service training programs for current ODRC employees. As a program administrator 2, appellant was responsible for scheduling, administering, and coordinating courses offered at the Academy. Appellant also arranged for volunteer training officers to come to the Academy from the various ODRC institutions to teach classes as needed. When an Academy employee requested a volunteer training officer from an ODRC institution, the employee would typically "send a request to the training officer of the institution where the person works, the actual instructor [being requested] and the warden of the institution where the volunteer instructor is employed." (Tr. at 229.)

{¶ 4} During her employment with ODRC, appellant was disciplined for various violations of the performance track of ODRC standards of employee conduct. On August 8, 2012, appellant received a written reprimand for violating Rule 17 of the standards of employee conduct. On July 10, 2013, appellant received a 2-day working suspension for violating Rules 8 and 12(B). On March 11, 2014, appellant received an order of removal from her employment. The order stated that, on December 4, 2013, appellant "failed to remove a box of ammunition from [her] personally owned vehicle before leaving it at the Marion Correctional Institution to be cleaned by ODRC inmates." (Appellee's Ex. 1.) The order stated appellant had violated Rule 30(B) of the standards of employee conduct, which prohibits the unauthorized conveyance or possession, while on state owned property, of weapons or ammunition.

{¶ 5} However, also on March 11, 2014, appellant, Dr. Reveal, and the Director of ODRC, Gary Mohr, entered into a Last Chance Agreement ("LCA"). The LCA provided ODRC would hold the order of removal in abeyance, and that in exchange:

> The Employee agrees to:
>
> 1). To refrain from any further performance-related misconduct.
>
> All parties hereto agree that if the employee violates this Last Chance Agreement, or commits any violations of the Performance Track of the ODRC Standards of Employee

Conduct, the appropriate discipline shall be termination from her position. The Employer/Agency need only prove that the employee violated this agreement and/or the Standards of Employee Conduct.

This Last Chance Agreement is in force and effect for a period of two (2) years from the date * * * of the employee's signature on this agreement. This two-year period may be extended by a period equal to the employee's absence of fourteen days or longer.

(Appellee's Ex. 1, "LCA".)

{¶ 6} In spring 2014, Warden Norman Robinson of the Chillicothe Correctional Institution ("CCI") contacted Dr. Reveal to express concerns he had "about the amount of hours that some of the instructors at CCI were being requested" to volunteer at the Academy. (Tr. at 50.) Warden Robinson informed Dr. Reveal there "were about three or four individuals" from CCI who were requesting off frequently to instruct at the Academy, and stated that "Charity Adkins was one of those individuals." (Tr. at 162.) Warden Robinson explained the amount of employees requesting off was "cut[ting] into [his] overtime budget." (Tr. at 149.)

{¶ 7} Thus, in an attempt to "ensure that the overtime was going to * * * be curtailed," Warden Robinson and Dr. Reveal decided that all requests from the Academy for instructors from CCI "would go through [the warden's] administrative assistant," Amy Hamilton. (Tr. at 160.) Dr. Reveal informed Hamilton about the new "system." (Tr. at 176.) In June 2014, Charlotte Jenkins became the warden of CCI.

{¶ 8} On May 12, 2014, Dr. Reveal sent an e-mail to Academy staff members, including appellant. The e-mail stated as follows: "Hello. Please send any instructor requests for a CCI volunteer instructor to Amy Hamilton, the Warden's Admin. Asst. Thank you. Tracy L. Reveal, Ph.D." (Appellee's Ex. 8.) Dr. Reveal considered the e-mail to be a written directive, and expected that her staff "would follow it." (Tr. at 53.) Appellant admitted she received the May 12, 2014 e-mail.

{¶ 9} Additionally, prior to May 12, 2014, appellant admitted she "did receive verbal instructions not to request Charity specifically," but asserted the communication "was 'broken' with no 'finality.' " (Appellee's Ex. 11, Attachment B.) Dr. Reveal also stated

that, prior to the May 12, 2014 e-mail, she had discussed with appellant "the concerns around requesting [Adkins] from CCI." (Tr. at 113.)

{¶ 10} On June 30, 2014, appellant sent out a combined request to Warden Jenkins of CCI and Warden Bennie Kelly of Grafton Correctional Institution ("GCI"). The request asked that Charity Adkins from CCI and David Robinson from GCI be permitted to instruct courses at the Academy scheduled for July 21-23 and August 25-29, 2014. Appellant admitted that her June 30, 2014 request, sent to Warden Jenkins rather than Hamilton, did not comport with Dr. Reveal's May 12, 2014 e-mail. (*See* Tr. at 27.) Appellant stated the June 30, 2014 request was "merely an oversight." (Tr. at 248.)

{¶ 11} On July 5, 2014, Adkins submitted her request for leave to be permitted to teach at the Academy on the July 21-23 and August 25-29 dates. Warden Jenkins reviewed the request, and noted the request was for "64 hours," which was "a lot of time for an employee to be gone from the institution." (Tr. at 137.) Warden Jenkins took the request for leave to Hamilton. Hamilton explained to Warden Jenkins that she had not received the initial request for Adkins to instruct at the Academy, and "there was a directive that came out and it wasn't followed correctly." (Tr. at 138.) Warden Jenkins denied Adkins' request for leave.

{¶ 12} On July 7, 2014, Hamilton filed an incident report regarding the situation. The ODRC chief inspector's office conducted an investigation into the incident report.

{¶ 13} On August 27, 2014, the chief inspector's office issued a report, concluding appellant "did violate the directive issued by Dr. Reveal regarding requesting instructors from CCI." (Appellee's Ex. 11.) On September 15, 2014, appellant received a pre-disciplinary conference notice, which informed appellant she had allegedly violated Rules 7 and 50 of the performance track of ODRC's standards of employee conduct. Rule 7 prohibits the "[f]ailure to follow post orders, administrative regulations, policies, or written or verbal directives." (Appellee's Ex. 3.) Rule 50 prohibits any violation of R.C. 124.34. Following the pre-disciplinary conference, ODRC concluded appellant had violated Rules 7 and 50 of the performance track of ODRC's standards of employee conduct.

{¶ 14} On October 2, 2014, ODRC issued an order of removal to appellant. The order noted the March 11, 2014 LCA, wherein appellant agreed that if she "committed any violation of the performance track of the ODRC [standards of employee conduct] while the

LCA was in effect, the appropriate discipline would be termination from employment." (Appellee's Ex. 1.) The order stated appellant had "violated a directive issued by Dr. Tracy Reveal," and that appellant's "failure to follow the directive" amounted to a violation of Rules 7 and 50 of the performance track of the standards of employee conduct. (Appellee's Ex. 1.) Appellant appealed the order of removal to the SPBR.

{¶ 15} Following a May 6, 2015 hearing, an administrative law judge ("ALJ") issued a report and recommendation on February 19, 2016. The ALJ noted appellant "acknowledged that she had received Dr. Reveal's May 12, 2014, email directing staff to send requests for CCI employees to serve as volunteer instructors to Amy Hamilton," and that appellant "further acknowledged that she failed to comply with Dr. Reveal's instructions when she requested CCI employee Charity Adkins as a volunteer instructor in June 2014." (Report & Recommendation at 3-4.) The ALJ noted appellant's contention that "her failure to comply with Dr. Reveal's instructions was a mistake, rather than an intentional or willful act," but concluded that appellant's "conduct constituted a violation of" Rules 7 and 50 of "the performance track of Appellee's [standards of employee conduct], and a violation of the LCA executed by the parties on March 11, 2014." (Report & Recommendation at 4.) The ALJ recommended that SPBR affirm the October 2, 2014 order of removal.

{¶ 16} Appellant filed objections to the ALJ's report and recommendation on March 22, 2016, arguing that ODRC failed to offer "proof that the email of May 12, 2014 was a 'directive.' " (Objs. to Report & Recommendation at 9.) The SPBR set the matter for a hearing before the full board on June 22, 2014.

{¶ 17} On July 19, 2016, SPBR issued an order affirming the October 2, 2014 order of removal. Appellant appealed SPBR's order to the Franklin County Court of Common Pleas.

{¶ 18} On October 27, 2016, appellant filed her brief in the trial court. Appellant argued that a directive was "not a one line, one time, email to selected staff asking them to please send certain requests to some other staff person not normally notified." (Appellant's Trial Brief at 8.) ODRC filed its brief in the trial court on November 28, 2016, arguing that the May 12, 2014 e-mail was a directive.

{¶ 19} On December 12, 2016, the trial court issued a decision and entry affirming the July 19, 2016 order of SPBR. The court noted that appellant and ODRC had agreed in the LCA that, if appellant committed any violation of the performance track of ODRC's standards of employee conduct, the appropriate discipline would be termination. The court observed that appellant had been given "an order/directive" on May 12, 2014 regarding "how to handle a request for instructors," and that "[a]ppellant failed to follow the new method when she requested instructors in June of 2014." (Decision at 7.) As such, the court concluded SPBR's July 19, 2016 order was supported by reliable, probative, and substantial evidence and was in accordance with law. The trial court affirmed SPBR's July 19, 2016 order.

{¶ 20} Appellant appeals, assigning the following errors for our review:

> I. The Trial Court erred in finding there was reliable probative and substantial evidence to support the administrative agency decision.
>
> II. The Trial Court failed to apply the proper standard of review required for statutory construction and interpretation of R.C. 124.
>
> III. The decision of the Trial Court that Appellant was no longer covered by the civil service rules due to the existence of the LCA is unreasonable and repugnant to the purpose of R.C. 124.
>
> IV. The decision of the Trial Court that Appellant was no longer covered by the civil service rules due to the existence of the LCA is unreasonable and repugnant to the purpose of R.C. 124.
>
> V. The Trial Court's decision failed as a matter of law when finding the conduct of the Appellant was misconduct, not a mere mistake, failing to apply the Civil Service Law and the LCA referenced documents in their entirety.
>
> VI. The Trial Court's decision failed as a matter of law to construe the terms of the LCA against the maker, the Ohio Department Of Rehabilitation and Correction, when it found Appellant's clerical mistake to be misconduct.
>
> VII. The Trial Court erred finding the LCA was violated and enforceable against the Appellant because its interpretation and decision by the Trial Court that any work error of any kind would result in a violation is inconsistent with the common use

of the word misconduct; that enforcement of that interpretation is against public policy as incorporated in R.C. 124 because the LCA evidences no meeting of the minds that "mistake" or "error" means misconduct; and that provision is unconscionable as interpreted by the Trial Court.

{¶ 21} SPBR shall "[h]ear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities * * * relative to * * * discharge." R.C. 124.03(A)(1). SPBR has the power to "affirm, disaffirm, or modify" an appointing authority's removal order. R.C. 124.03(A)(1). In cases of removal, the employee may appeal the decision of SPBR to the court of common pleas as provided in R.C. 119.12. R.C. 124.34(B).

{¶ 22} Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 23} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. *See also Ohio Dept. of Rehab. & Corr. v. Price*, 10th Dist. No. 10AP-260, 2010-Ohio-5629, ¶ 20. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in

accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 24} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Id.* An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.,* 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

{¶ 25} Appellant's first assignment of error asserts the trial court erred in finding reliable, probative, and substantial evidence to support the agency's decision. Appellant asserts that, while the evidence was "probative to the extent that it tended to prove the existence of the conduct alleged," the evidence was "not probative as to whether that conduct was misconduct as such word was used in the LCA." (Appellant's Brief at 9-10.)

{¶ 26} A " 'last chance agreement' means an agreement signed by both an appointing authority and an officer or employee of the appointing authority that describes the type of behavior or circumstances that, if it occurs, will automatically lead to removal of the officer or employee." R.C. 124.34(F). *See also Saadey v. Mahoning Cty. Engineers*, 7th Dist. No. 01 CA 82, 2002-Ohio-3464, ¶ 32. A last chance agreement is a contract, and thus subject to the rules of contract construction. *See Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, ¶ 63-64 (10th Dist.).

{¶ 27} "The construction of written contracts * * * is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. " 'Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo.' " *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996), quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). Contracts that are, by their terms, clear and unambiguous require no real interpretation or construction, and courts will enforce such contracts as written. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). However, when contracts contain ambiguous or conflicting terms, it is proper for a court to consider "extrinsic evidence," i.e., evidence outside the four corners of the

contracts, in order to determine the parties' intent. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

{¶ 28} Indeed, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler* at 361. "In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible." *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 23. Common words are presumed to hold their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the instrument. *Plaza Dev. Co. v. W. Cooper Ents., LLC*, 10th Dist. No. 13AP-234, 2014-Ohio-2418, ¶ 25. "Where one instrument incorporates another by reference, both must be read together." *Columbus City School Dist. Bd. of Edn. v. Zaino*, 90 Ohio St.3d 496, 501 (2001).

{¶ 29} Appellant contends she only agreed in the LCA to refrain from any "further performance related misconduct." Appellant asserts that "[b]ecause there is nothing else enumerated in the LCA as a promise by the employee," the "language 'All parties hereto agree that if the employee violates this last chance agreement, or' * * * is mere surplusage." (Appellant's Brief at 15.) We disagree.

{¶ 30} While appellant agreed to refrain from performance related misconduct, she also agreed that if she "violate[d] this [LCA], or commit[ted] any violations of the Performance Track of the ODRC Standards of Employee Conduct, the appropriate discipline [would] be termination from her position." (Appellee's Ex. 1.) Pursuant to the disjunctive "or," the LCA presented two events which would result in appellant's termination: (1) if appellant engaged in performance related misconduct, or (2) if appellant committed any violation of the performance track of ODRC's standards of employee conduct.

{¶ 31} Appellant argues that neither SPBR nor the trial court "opined what it was about the Appellant's admitted 'mistake' that took it to the level of misconduct." (Appellant's Brief at 10.) However, because appellant's "mistake" violated the performance track of ODRC's standards of employee conduct, the LCA provided for appellant's termination. ODRC did not need to additionally establish that appellant's conduct was misconduct.

{¶ 32} Rule 7 of the performance track of ODRC's standards of employee conduct prohibits the "[f]ailure to follow * * * written or verbal directives." (Appellee's Ex. 3.) Rule 50 prohibits "[a]ny violation of ORC 124.34." (Appellee's Ex. 3.) R.C. 124.34(A) provides that "[n]o officer or employee shall be * * * removed * * * except * * * for," among other things, "violation of any policy or work rule of the officer's or employee's appointing authority." Because a violation of Rule 7 of the standards of employee conduct violated an ODRC work rule, the Rule 7 violation was also a violation of R.C. 124.34(A). Thus, the Rule 7 violation amounted to a Rule 50 violation.

{¶ 33} ODRC's standards of employee conduct do not define the word "directive." A directive is generally defined as "something that serves to direct, guide, and usu. impel toward an action or goal; *esp* : an authoritative instrument issued by a high-level body or official." *Merriam-Webster's Collegiate Dictionary* 354 (11th Ed.2014). The May 12, 2014 e-mail came from the highest level official at the Academy, Superintendent Dr. Reveal. Appellant admitted she received the e-mail, and admitted that "the intention" of the e-mail "was for [her] to follow it." (Tr. at 22.) Appellant's job involved requesting volunteer instructors from ODRC institutions, and the May 12, 2014 e-mail instructed appellant regarding how she was to perform that aspect of her job with respect to requests sent to CCI.

{¶ 34} Accordingly, the May 12, 2014 e-mail was a written directive. The e-mail was an authoritative instrument issued from the highest level official at the Academy, which directed Academy employees to send requests for volunteer instructors from CCI to Hamilton. The evidence of appellant's June 30, 2014 request, sent to Warden Jenkins rather than Hamilton, was reliable, probative, and substantial evidence demonstrating appellant failed to follow Dr. Reveal's May 12, 2014 directive.

{¶ 35} Appellant argues that, because she "contact[s] institutions to request instructors" as part of her job, she "did not violate any rule by contacting GCI or CCI for an instructor." (Appellant's Brief at 12.) To the contrary, it is precisely because appellant failed to perform her job in accordance with the May 12, 2014 directive that she violated Rule 7 of the standards of employee conduct. *Compare Mayer v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-380, 2012-Ohio-948, ¶ 22 (where "appellant's supervisor, told appellant to have no further involvement with Griffeth's case," but the "[a]ppellant disobeyed his

[supervisor's] order" and continued to work on the case, the appellant's "later rationalizations" regarding why he needed to remain involved were "immaterial"); *Wiebusch v. Cleveland Civ. Serv. Comm.*, 8th Dist. No. 97714, 2012-Ohio-3953, ¶ 26-27.

{¶ 36} Appellant also argues her conduct must have been "willful" to violate the standards of conduct. (Appellant's Brief at 16.) However, there is nothing in Rule 7 stating that the employee must willfully fail to follow a written or verbal directive.[1] An employee's failure to follow a written or verbal directive, regardless of intent, amounts to a violation of the rule.

{¶ 37} Reliable, probative, and substantial evidence demonstrates appellant violated Rule 7, and accordingly Rule 50, of the performance track of ODRC's standards of employee conduct.  Because appellant's violation of these rules occurred within the two-year time frame specified in the LCA, the appropriate discipline was appellant's termination from her position as a program administrator 2.

{¶ 38} Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 39} Appellant's second, third, fourth, and fifth assignments of error all concern the following passage from the trial court's decision:

> The issue of intent is asserted by the Appellant to show that her mistake cannot be viewed as a breach of the LCA. However, the lack of a wrongful intent might go to the theory of mitigation but not to the breach of the LCA. * * * As the SPBR noted in its meeting minutes, the violation cannot be justified by using a subjective review of the employee's intent. Most if not all of the Appellant's substantive arguments went to the issue of the size of the error and the fairness of a state employer terminating someone for such a small error. However, the Appellant was no longer covered by the civil service rules due to the existence of the LCA. Under normal situations, the Appellant would never have faced a sanction such as termination – but that all changed with the LCA.

(Decision at 7.)

---

[1] In contrast, other rules of the performance track of ODRC's standards of employee conduct do contain mens rea elements. Rule 5 prohibits "[p]urposeful or careless act(s) which result in" either "[d]amage, loss or misuse of Property of the State"; and Rule 34 prohibits "[k]nowingly, punching/swiping or electronically recording the time record of another employee." (Appellee's Ex. 3.)

{¶ 40} Appellant asserts the "LCA did not override the application of R.C. 124.34," and that the trial court erred in stating that "an LCA supersedes R.C. 124.34 in all respects regarding the application of civil service law to the Appellant." (Appellant's Brief at 18-19.)

{¶ 41} The trial court, however, also stated that "[a]ppellant was covered by a valid LCA. Hence, the review conducted by the SPBR was limited as noted in R.C. 124.34(B)." (Decision at 6.) R.C. 124.34(B) provides that "in an appeal of a removal order based upon a violation of a [LCA], [SPBR] may only determine if the employee violated the agreement and thus affirm or disaffirm the judgment of the appointing authority."

{¶ 42} Generally, SPBR has the authority to "review an appointing authority's decision and to disaffirm an employee's discharge not only where the appointing authority acted arbitrarily, unreasonably, or unlawfully, but also where [SPBR] finds in an independent review that the decision regarding discharge is improper or unnecessary." *Maurer v. Franklin Cty. Treasurer*, 10th Dist. No. 07AP-1027, 2008-Ohio-3468, ¶ 13. *See also Ohio State Univ. v. Kyle*, 10th Dist. No. 06AP-168, 2006-Ohio-5517, ¶ 23. Pursuant to R.C. 124.34(B), however, SPBR's review of the present removal order was limited to determining whether appellant violated the LCA. The trial court's statement, that appellant was no longer covered by the civil service rules due to the existence of the LCA, was merely an acknowledgment of the restriction contained in R.C. 124.34(B).

{¶ 43} Appellant asserts the "employment environment of the Appellant and all public employees is not stable and is subject to the whimsy of a spoils system if any mistake can overcome fairness based upon merit and fitness for service." (Appellant's Brief at 25.) *See Hungler v. Cincinnati*, 25 Ohio St.3d 338, 344 (1986), quoting *McCarter v. Cincinnati*, 3 Ohio App.3d 244, 248 (1st Dist.1981). Appellant, however, did not lose her job due to the whimsy of a spoils system. Appellant had prior instances of discipline, and entered into the LCA on March 11, 2014 rather than being terminated at that time. Appellant was not terminated for making "any mistake," as she asserts. Appellant violated Rules 7 and 50 of the performance track of ODRC's standards of employee conduct, violations which she agreed in the LCA would result in her termination.

{¶ 44} Based on the foregoing, appellant's second, third, fourth, and fifth assignments of error are overruled.

{¶ 45} Appellant's sixth assignment of error asserts the trial court failed to construe the terms of the LCA against ODRC. Appellant's seventh assignment of error asserts the trial court erred in finding she violated the LCA. "[C]ontracts should be construed against the drafting party." *Fouty* at ¶ 64. However, we find nothing in the trial court's decision indicating the court did not construe the LCA against ODRC. Rather, the terms of the LCA were straightforward and unambiguous. Because appellant violated Rules 7 and 50 "of the Performance Track of the ODRC Standards of Employee Conduct, the appropriate discipline [was] termination from her position." Appellant's sixth and seventh assignments of error are overruled. (Appellee's Ex. 1.)

{¶ 46} The SPBR's July 19, 2016 order upholding ODRC's October 2, 2014 order removing appellant from her position as a program administrator 2 was supported by reliable, probative, and substantial evidence and was in accordance with law. Accordingly, we find no abuse of discretion in the trial court's decision upholding SPBR's order.

{¶ 47} Having overruled appellant's seven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____