OPINION
{¶ 1} Appellant, William J. Kyle, appeals from a judgment of the Franklin County Court of Common Pleas that reversed the order of the State Personnel Review Board ("board") reinstating appellant's employment with appellee, Ohio State University ("OSU"). Appellant assigns a single error:
THE DECISION OF THE LOWER COURT REVERSING THE STATE PERSONNEL BOARD OF REVIEW WAS AN ABUSE OF DISCRETION INSOFAR AS THE ORDER OF THE BOARD DIRECTING THE REINSTATEMENT OF WILLIAM KYLE TO HIS POSITION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH THE LAW.
Because the common pleas court improperly substituted its judgment for that of the board, we reverse.
 {¶ 2} In January 2001, OSU hired appellant as an Account Clerk 2 for the Office of Student Accounting and Reconciliations, a position under the Office of the Treasurer. Prior to being hired, appellant worked as a custodian for OSU, but he had nearly ten years of experience in the accounting field, including eight years of working for the State of Ohio. As a result of his experience, appellant is familiar with basic accounting principles and ethics.
 {¶ 3} During his tenure at OSU, appellant's immediate supervisor was Richard Givens. Appellant and his only co-worker, Chrissie Byrum, held positions under the same title, but Givens referred to Byrum as the "lead clerk," and appellant assumed Byrum was his superior rather than his equal. Givens informed appellant during orientation that if he were unable to ask Givens or Byrum a question, he could ask Valerie Parish, Supervisor for the Office of Bank Reconciliations.
 {¶ 4} As a result of an internal audit and subsequent investigation, OSU terminated Givens, Byrum, and Parish from their employment. The investigation revealed that Parish embezzled over $30,000 from OSU. Appellant's employment also was ended; his removal order stated he was terminated for dishonesty and neglect of duty. Specifically, the order alleged that appellant (1) violated the Office of the Treasurer procedures in cashing personal checks for Parish on at least two occasions in Student Accounting and Reconciliations, an area that is not authorized to perform such transactions; (2) intentionally posted incorrect entries into the general ledger to support the unauthorized check cashing; and (3) cashed at least one personal check for himself backed by insufficient funds and failed to abide by normal procedures to repay the money.
 {¶ 5} A hearing was held before an administrative law judge ("ALJ"). The parties stipulated that (1) appellant improperly cashed one personal check in the amount of $200 on June 25, 2003; (2) the check was returned for insufficient funding; (3) appellant repaid the amount, but did not do so through the proper channels; and (4) appellant did not pay the insufficient fund penalty.
 {¶ 6} At the hearing, appellant testified he was aware that, because he handled cash on a daily basis, his position required a high level of security. Appellant's essential duties consisted of calculating daily cash and check totals, making daily deposits, balancing the deposits to the Billing and Accounts Receivable System ("BARS"), and reconciling monthly OSU's general ledger system ("ARMS") with the BARS total. The BARS system fed the general ledger system and separated the amount of cash received for a given day from the amount of checks received.
 {¶ 7} The first two transactions referenced in the removal order involve appellant's participation in cashing Parish's personal checks and posting incorrect journal entries regarding same. Explaining his duty of totaling daily balances, appellant stated that OSU's BARS system separates the total amount of cash received from the total amount of checks received. Appellant was required to calculate separately the amount of cash and checks and compare the totals with the BARS report. If the totals did not match, appellant investigated the reason for the discrepancy. Importantly, appellant testified that his supervisor, Givens, as well as Parish, informed him that as long as the combined total of cash and checks matched the BARS report, the funds were considered balanced. Appellant therefore believed that the failure of the total amount of actual cash to match the BARS report of actual cash was not significant. Appellant further stated that many times when he compared the BARS to ARMS with Givens, Givens told him certain items were correct even when appellant felt a discrepancy existed.
 {¶ 8} Appellant testified he witnessed co-worker Byrum cash personal checks for Givens and Parish, through appellant's office, on at least 20 occasions; appellant could not recall specific amounts. Appellant testified that Parish would contact him, ask about the amount of cash he had for the deposit, and then write a personal check for slightly less than the stated amount. Appellant testified he never personally cashed the checks for Parish or Givens. Appellant, however, posted incorrect journal entries regarding two of Parish's personal checks, one for $1,350 and one for $1,200. Essentially, appellant's journal entries for those deposits did not match the daily report for cash because a check was inserted to appear as a balance for the missing cash.
 {¶ 9} Appellant testified he did not question the transactions because Givens, Byrum, and Parish told him that an employee could cash personal checks as long as they paid the transaction fee. Appellant testified, "You know what, I never knew what [Parish] did with the money. I never asked. I just-you know, I knew she was divorced and she traveled. You know, she used to go down to Kentucky, and Tennessee, and gambling boats and stuff like that all the time. And I-I just-you know, I know sometimes you need cash." Appellant, however, also testified Byrum instructed him that only the Office of Fees and Deposits, rather than appellant's office, was authorized to cash personal checks for employees.
 {¶ 10} The third transaction referenced in the removal order involved the $200 personal check appellant cashed that was returned for insufficient funds. Appellant testified he cashed one personal check in the amount of $200 at the Office of Fees and Deposits, but he did not cash it through the deposits he reconciled. When his personal check later was returned for insufficient funds, Givens told appellant to repay the amount; appellant subsequently paid Givens the money and no further action was taken. Appellant testified he never saw, or was aware of, a written policy against employee check cashing.
 {¶ 11} Alvin Rodack, OSU's Associate Treasurer in charge of Daily Operations, testified that prior to the late 1990's, the Treasurer's office allowed the Office of Fees and Deposits to cash employee personal checks up to a specified amount. According to Rodack, since the late 1990's, no personal checks were to be cashed by any office. Rodack stated that on November 6, 2001, an e-mail reminder of this policy was sent to supervisors. Rodack explained his office had no written policy because the office had a "positive policy" system, meaning its policies state what employees can do instead of what is prohibited. Rodack testified that if no policy addressed a specific function, the function generally was prohibited.
 {¶ 12} Brian Newell, Department of Internal Audits for OSU, testified regarding the internal investigation involving Givens, Byrum, Parish, and appellant. The investigation ultimately revealed that Parish embezzled over $30,000. Parish was removed from her employment, criminally charged, and convicted.
 {¶ 13} According to Newell, the office listed the amount of cash separately from the amount of checks as a security device to ensure all money was properly accounted for and matched the physical deposits. Newell explained that the amounts appellant posted in two entries did not match the amount in ARMS, because checks were being added and cash removed after the journal entry was made but before the deposit was completed. Newell testified he was positive appellant posted the incorrect entries because appellant's unique operator identification was listed next to the entries, though Newell admitted he was unaware if any other employee had access to appellant's identification. Newell concluded that appellant was either aware that Parish had taken cash from the deposits or was negligent in reporting inaccurate cash totals.
 {¶ 14} Pranab Bhattacharya, Assistant Treasurer of Treasury Administration for OSU, testified that OSU did not permit employees to cash checks. On November 6, 2001, the supervisor of the Office of Fees and Deposits sent an e-mail to all section heads within OSU's Treasury office, including Givens, stating that the Office of Fees and Deposits would no longer cash personal checks, student checks, or petty cash checks. Bhattacharya acknowledged that OSU did not have a written policy on cashing personal checks.
 {¶ 15} On cross-examination, Bhattacharya testified he did not personally distribute the e-mail to employees because he believed all employees were aware of the unwritten policy. Further, Bhattacharya testified that he assumed that the section heads, such as Givens, would distribute the e-mail to the appropriate employees. According to Bhattacharya, Givens told him that appellant was made aware of the check cashing policy during appellant's training.
 {¶ 16} After hearing the testimony, the ALJ found that OSU did not prove by a preponderance of the evidence the more serious allegations contained in the removal order. The ALJ found that "on numerous occasions" appellant listed deposits reflecting incorrect cash totals and check totals, even though the aggregate total balanced with the BARS report. On two such occasions, appellant's unique operator identification was listed next to the incorrect journal entries. The ALJ, however, found Givens instructed appellant that only the aggregate total of cash and checks, not the individual totals, were of consequence when reconciling the daily deposits with the BARS report.
 {¶ 17} The ALJ concluded appellant cashed a returned check for himself, did not pay the penalty fee, and should have been aware he was cashing a bad check. The ALJ further determined, however, that appellant did not cash the check through his own office, but through the Office of Fees and Deposits pursuant to Byrum's instructions. The ALJ concluded that because a separate office cashed his check, that office must not have been aware of the policy against cashing employee checks. The ALJ further determined OSU did not prove appellant individually was made aware of such policy because no witness affirmatively established that the November 6, 2001 e-mail prohibiting check cashing was communicated to appellant.
 {¶ 18} As to the two transactions involving Parish, the ALJ concluded that although appellant witnessed Parish cash the checks, no evidence suggested appellant personally cashed them, as alleged in the removal order. Similarly, although the removal order also alleged appellant "intentionally posted incorrect entries into the general ledger to support these transactions," the ALJ concluded OSU failed to demonstrate that appellant was involved in embezzlement of funds or posted incorrect entries with the intent to defraud or embezzle. Rather, the ALJ found that appellant posted incorrect entries because Givens told him he properly could do so as long as the aggregate total balanced.
 {¶ 19} The ALJ did not absolve appellant of all responsibility, stating "the evidence also established that [appellant] has had approximately ten years' experience in the accounting field. That would lead one to believe then, that he should have become suspicious when he witnessed his supervisor and another employee cashing checks and then telling him it was alright when the cash total of the one report did not match the other. It is reasonable to assume that anyone with [appellant's] experience, and even those persons with less experience, would be concerned when the actual cash on hand did not balance with a report verifying the cash taken in." The ALJ further stated that although "[OSU] did not prove that [appellant] was intentional in his erroneous balancing, [appellant] should be held responsible for neglecting his duty of ensuring the balancing and safeguarding of [OSU's] funds. Given the fact that [appellant] has no prior discipline and the fact that [OSU] did not prove the allegations in the removal order, the discipline of removal is too harsh a penalty."
 {¶ 20} Based on her findings and conclusions, the ALJ recommended that appellant's removal be modified to a six-month suspension. The board agreed with the ALJ's finding but modified the recommendation to also order that no back pay be awarded from January 7, 2004 through the date of the order, July 7, 2005.
 {¶ 21} OSU appealed to the common pleas court. The common pleas court reversed the board's order and reinstated OSU's order removing appellant from employment with OSU. The court reiterated parts of the testimony from the hearing, stated the findings of the ALJ and board, and ultimately concluded the record does not contain reliable, probative, and substantial evidence of mitigating circumstances to support restoring appellant to a position of trust. In support of its conclusion, the common pleas court restated that appellant repeatedly witnessed large amounts of cash being removed from the deposits but did nothing. Instead, despite his years of accounting experience, he admitted he made journal entries that did not reflect the correct amount of cash in the deposits.
 {¶ 22} Appellant's single assignment of error contends the common pleas court acted outside its authority in reinstating OSU's order to remove appellant from employment, usurped the function of the board, and improperly substituted its own judgment.
 {¶ 23} Pursuant to R.C. 124.03(A), the board shall "[h]ear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities * * * relative to reduction in pay or position, job abolishments, layoff, suspension, discharge * * *. The board may affirm, disaffirm, or modify the decisions of the appointing authorities or the director, as the case may be, and its decision is final." Through R.C. 124.03(A), the General Assembly gave the board broad powers to review final decisions of appointing authorities; the board may disaffirm discharges not only where the appointing authority acted arbitrarily, unreasonably, or unlawfully, but also where it finds from an independent review that the decision regarding discharge is improper or unnecessary. Maiden v.Fayette Cty. Bd. of Retardation (1984), 16 Ohio App.3d 196, quoting State ex rel. Ogan v. Teater (1978), 54 Ohio St.2d 235. See, also, Beeler v. Franklin Cty. Sheriff (1990),67 Ohio App.3d 748, 752 (stating that "[c]ourts have interpreted R.C.124.03 to provide great latitude to the [board] to alter decisions of appointing authorities").
 {¶ 24} In Maiden, the court determined that the board's decision to modify the punishment the appointing authority imposed was permitted under R.C. 124.03. The court reasoned that if the term "modify" as used in the statute is to have any meaning, the board, upon a proper review of all the factors affecting the appointing authority's decision, has the power to accept the adjudication but may modify the punishment. Id.Maiden observed, in the face of mitigating circumstances, that "this is the very reason the board is given the statutory authority to modify such an order-to permit an objective third party to hear the evidence and change an unduly harsh punishment if necessary. If [however] the adjudication is improper, the board will simply disaffirm the entire decision of the appointing authority." Beeler, at 752, quoting Maiden, supra.
 {¶ 25} Pursuant to R.C. 119.12, the board's decision concerning the removal of an employee by an appointing authority may be appealed to the common pleas court. The common pleas court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." Univ. of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108, 110, quoting R.C. 119.12. In reaching its decision, the court of common pleas must appraise all the evidence as to credibility of witnesses, the probative character of the evidence and the weight to be given the evidence.Conrad, supra, citing Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275.
 {¶ 26} Importantly, R.C. 119.12 does not contemplate a de novo review in the common pleas court. Conrad, supra. Rather, the question of whether an agency's decision is supported by reliable, probative, and substantial evidence is a question of the absence or presence of the requisite quantum of evidence.Beeler, supra. "The [Andrews] court pointed out that, while in essence this is a legal question, inevitably it involves a consideration of the evidence and to a limited extent would permit a substitution of judgment by the reviewing common pleas court. In this hybrid review, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts." Id. at 753, quoting Andrews, supra.
 {¶ 27} When confronted by conflicting testimony of approximately equal weight, the common pleas "court should defer to the determination of the administrative body which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and to weigh their credibility." Id. Even so, "the findings of the agency are by no means conclusive. When the common pleas court in its appraisal of the evidence determines that there exist legally sufficient reasons for discrediting certain evidence relied upon by the administrative body and necessary to its determination, the court may reverse, vacate, or modify the administrative order." Id. R.C. 119.12 has been interpreted to mean that where the evidence supports the board's decision, the common pleas court must affirm the board and has no authority to modify the penalty. Steinbacher v. Louis (1987),36 Ohio App.3d 68, citing Henry's Café, Inc. v. Bd. of LiquorControl (1959), 170 Ohio St. 233. Under such circumstances, the common pleas court may not substitute its judgment for that of the board. Steinbacher, citing Ogan, supra.
 {¶ 28} While the common pleas court possesses the power to weigh the evidence and evaluate the credibility of the witnesses, the appellate court reviewing that determination is under a more limited scope of review. Graziano v. Bd. of Edn. of AmherstExempted Village School District (1987), 32 Ohio St.3d 289. The appellate court must simply determine whether the common pleas court abused its discretion. Id. Absent an abuse of discretion, the appellate court may not substitute its judgment for that of the administrative agency or the common pleas court. Id.
 {¶ 29} Here, the board found the mitigating circumstances rendered the removal penalty too harsh. See, e.g., Maiden,
supra. Specifically, the board found that (1) OSU did not prove the more serious allegations contained in the removal order; and (2) appellant had no prior discipline. While the ALJ and board acknowledged that appellant neglected his duty and should have become suspicious of Givens' and Parish's cashing personal checks out of the money appellant reconciled, no evidence indicated either that appellant actually cashed any of those checks himself or made incorrect journal entries with the intent to defraud OSU, embezzle funds, or assist Parish in embezzling funds.
 {¶ 30} Appellant's testimony supports the board's finding that OSU did not prove its more serious allegations: that appellant cashed two of Parish's checks and intentionally posted incorrect journal entries to support Parish's transactions. Appellant testified he never personally cashed the checks for Parish; rather, he witnessed Byrum cashing personal checks for both Givens and Parish on numerous occasions. No testimony in the record contradicts or discredits appellant's testimony on this point. While Byrum informed appellant that employees could only cash personal checks at the Office of Fees and Deposits, no written policy on the subject was adopted and, perhaps more importantly, no witness established that the unwritten policy was regularly, if ever, enforced.
 {¶ 31} With regard to the incorrect journal entries, appellant without question neglected his duty and should have known that posting incorrect entries was against basic accounting principles. The board, however, balanced appellant's knowledge of those principles with his instructions from Givens about reconciling the ARMS total with the BARS total: Givens told appellant that as long as the aggregate totals matched, the funds were considered balanced. Indeed, appellant testified that on several occasions, appellant had concerns about certain discrepancies, but Givens told him nothing was amiss. Accordingly, although appellant knew he posted incorrect entries, the evidence does not establish that appellant posted the incorrect entries in order to cover up or assist Parish in her scheme to embezzle funds from OSU.
 {¶ 32} In its review of the evidence, the common pleas court reiterates the board's findings of fact but concludes that the evidence is insufficient to support a finding of mitigating circumstances to restore appellant to his former position. The common pleas court, however, does not discredit appellant's version of the events or acknowledge the conflicting testimony presented to the ALJ. See Jones v. Franklin Cty. Sheriff
(1990), 52 Ohio St.3d 40 (reversing the court of appeals decision to reverse the common pleas court where the record indisputably revealed conduct warranting removal); Beeler; Conrad, supra. Rather, the common pleas court highlighted certain facts the board found, through its ALJ, and reversed the board's decision because the court deemed removal proper due to the position of trust appellant occupied at OSU.
 {¶ 33} Under the circumstances of this case, the board's decision is entitled to deference, as it observed the witnesses, particularly appellant, and weighed their credibility. Because reliable, probative, and substantial evidence supports the board's findings and conclusions, the common pleas court had no authority to modify the penalty the board imposed. Accordingly, the common pleas court erred in reversing the board and reinstating OSU's order of removal. Appellant's single assignment of error is sustained.
 {¶ 34} Having sustained appellant's single assignment of error, we reverse the common pleas court's judgment and remand with instructions to affirm the board's order.
Judgment reversed and case remanded with instructions.
Petree and Brown, JJ., concur.