[Cite as *Tuscarawas Cty. Pub. Defender's Office v. Goudy*, 2023-Ohio-1653.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TUSCARAWAS COUNTY PUBLIC DEFENDER'S OFFICE | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2020 AP 10 0023 |
| | : | |
| KRISTY GOUDY | : | |
| | : | |
| | : | |
| Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2019 AA 10 0679

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      May 16, 2023

APPEARANCES:

For Appellant:

SCOTT H. DEHART
JONATHAN J. DOWNES
Zashin & Rich Co., L.P.A.
17 South High St., Suite 750
Columbus, OH 43215

For Appellee:

MICHAEL A. MOSES
Moses Law Offices, L.L.C.
556 E. Town Street – Suite 201
Columbus, OH 43215-4802

*Delaney, J.*

{¶1} Appellant Tuscarawas County Public Defender's Office appeals the September 16, 2020 judgment entry of the Tuscarawas County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

**Tuscarawas County Public Defender's Office**

{¶1} Appellant Tuscarawas County Public Defender's Office ("TCPD"), a county entity, hired Appellee Kristy Goudy as a full-time secretary on or about August 19, 1996. Goudy was a classified employee. The TCPD Director was Gerald Latanich and the Deputy Director was Nicole Stephan. Goudy worked as a secretary in the TCPD office with three other secretaries: L.C., L.F., and M.P.

{¶2} Each TCPD secretary was assigned to assist two assistant public defenders. The secretaries were also expected to cooperate with each other by correctly routing calls they received and facilitating coordination between the attorneys. The TCPD office culture, however, did not reflect cooperation and goodwill between the secretarial staff.

{¶3} In order to manage the office culture, Director Latanich consulted with the Tuscarawas County Human Resources Manager ("HR Manager") and as a result, the TCPD adopted the Tuscarawas County Personnel Manual ("TCPD Personnel Manual"). Goudy acknowledged receiving a copy of the TCPD Personnel Manual and written position description on January 22, 2018. Sections 7.1 through 7.4 of the TCPD Personnel Manual outlined the TCPD disciplinary procedures for correcting job behavior.

{¶4} On February 14, 2018, Director Latanich issued a memo regarding office policy and a change in office policy. The memo stated:

1. It has been decided and approved by the Tuscarawas County Public Defender Board that [M.P.] will be the supervisor of all secretarial staff.

* * *

5. A protocol of how to answer an incoming phone call has been provided. This includes the information to be obtained from the caller. This shall be used by all secretaries when answering an incoming phone call.

* * *

9. Pursuant to the Tuscarawas County Public Defender Policy and the Tuscarawas County Personnel Manual, all staff should treat clients and other staff with dignity and respect, which will be enforced.

10. Kristy will be in charge of ordering all office supplies. * * *

{¶5} Pursuant to the protocol of "Answering the Telephone," the secretary answering the phone was required to forward a call to the secretary assigned to the requested attorney. If the specific secretary was not available, the secretary was required to take a written message. Phone calls were not to be forwarded directly to the attorneys.

**Written Warning**

{¶6}   On February 23, 2018, Director Latanich issued a written warning to Goudy regarding her workplace behavior. The written warning stated in pertinent part:

* * *

Everyone needs to get along and the toxic relationship between you and the other secretaries must stop.

This letter shall serve as a:

WRITTEN WARNING

Group Offense I, #1 – DISCOURTEOUS OR DISRESPECTFUL TREATMENT OF COWORKERS.

Please be advised that future violations of Corrective Action Policy shall result in further disciplinary action up to and including termination of employment.

Director Latanich issued the identical written warning to M.P. and L.C.

### Human Resources Department Investigation

{¶7} On June 28, 2018, L.F. provided the Tuscarawas County Human Resources Department with a formal written report of an incident between her and Goudy. L.F. stated that while she and Goudy were standing by the office copy machine, Goudy said L.F. was being "sexy" today and Goudy put her finger in the eyelet lacing on L.F.'s shirt, touching L.F.'s skin. L.F. left the area and told two attorneys about the incident. L.F. said in the report that another incident with Goudy occurred a few months before the touching incident. L.F.'s cell phone rang but was set to vibrate. In front of two other staff members, Goudy asked L.F. if that was L.F.'s vibrator.

{¶8} On June 29, 2018, Director Latanich and Deputy Director Stephan met with the HR Manager to discuss Goudy's work performance. On July 9, 2018, Director Latanich, through the HR Manager, provided Goudy with written notice that she was being placed on paid administrative leave while the TCPD investigated allegations of her potential workplace misconduct. The Notice of Administrative Leave admonished Goudy that she was "not to disclose any details of the investigation to any party, other than a personal legal representative or union representative."

{¶9} The HR Manager investigated and produced an investigatory report on July 12, 2018. The investigatory report made no determination as to whether discipline was warranted. Based on the HR Manager's interviews with nine witnesses, including Goudy, and review of twelve documents, the HR Director substantiated that Goudy was involved in three workplace incidents. First, it was substantiated that Goudy told L.F. that she was sexy, and that Goudy touched L.F.'s shirt. Goudy admitted that she may have touched L.F.'s skin. Second, Goudy admitted to making the comment that L.F.'s cell phone was a vibrator. Third, on June 15, 2018, M.P. reported to Director Latanich and Deputy Director Stephan that while M.P. was on a phone call with a client, Goudy opened her office door, M.P. asked Goudy what she wanted, and then Goudy slammed the door shut. Precipitating the slamming of the door, Goudy had received a phone call for a TCPD attorney and tried to transfer the call to M.P. M.P. was unavailable to take the call and instead of taking a written message pursuant to the answering the telephone policy, Goudy paged the attorney, but the attorney did not answer. Goudy admitted she went to M.P.'s office, opened the door, and slammed the door because she was angry at M.P.

{¶10} The investigatory report stated that during the HR Manager's interview with Goudy on July 9, 2018, he instructed her not to speak to any other employees as indicated on the Notice of Administrative Leave. The HR Manager interviewed L.C. on July 10, 2018. He asked L.C. if she knew why he was speaking with her. "She said yes, that Ms. Goudy had come to her house the night before and discussed it with her." (Investigatory Report, July 12, 2018). The investigatory report stated, "I did continue the interview at this point despite this being a direct violation of the Administrative Leave notice given to Ms.

Goudy. I consider [L.C.]'s statements to be coerced by Ms. Goudy and lacking her own thoughts or facts."  (Investigatory Report, July 12, 2018).

{¶11}  A pre-disciplinary conference before a Hearing Officer was held on July 27, 2018. The allegations of misconduct listed in the notification of pre-disciplinary conference included the following:

Group I

#1 Discourteous treatment of co-workers

#9 Intimidating other employees

#10 Failure to cooperate with supervisors

#25 Failure to conduct yourself in a moral manner and demonstrate common decency

#26 Violation of any policy or work rule-office policy regarding answering of phones

Group III

#1 Neglect in performance of assigned duties

#14 Dishonesty

#15 Insubordination

#23 Violation of any policy-workplace violence section 6.24

{¶12} Section 7.2 of the TCPD Personnel Manual outlined the guidelines for discipline. Group I Offenses were defined as "those infractions that violate a standard of conduct that would or could cause minimal disruption to the organization in terms of a decrease in organizational productivity, efficiency and/or morale. Group I Offenses, if left undisciplined by proper authority, will usually have only a temporary or minor impact on

the organization unless such acts are compounded over time." For Group I Offenses, the discretionary disciplinary progression listed the first offense as a verbal warning, the second offense as a written warning, the third offense as up to twenty-four hour or three-day suspension, the fourth offense as up to fifteen-day suspension, and the fifth offense as up to termination. Group III Offenses "included those infractions that violate a standard of conduct of serious or repeated acts of misconduct, negligence or that would or could cause or result in a critical disruption to the organization in terms of decreased productivity, efficiency and/or morale. Group III Offenses, if left undisciplined by proper authority, may have a long lasting and serious impact on the organization." The discretionary disciplinary progression for Group III Offenses was up to and including termination for the first offense.

{¶13} The Hearing Officer issued a report determining Goudy had violated various standards of conduct. As to the Group I Offenses, the Hearing Officer determined that (#9) Goudy was discourteous to her coworkers based on her prior written warning, slamming M.P.'s door, and the incident with L.F. by the office copier; (#10) Goudy failed to cooperate with other employees and supervisors based on the written warning, she chose not to follow the answering the telephone policy and slammed M.P.'s door, and she disregarded the HR Manager's warning and discussed the case with L.C.; and (#26) Goudy violated a policy or work rule when she did not follow the answering the telephone policy. As to the Group III Offenses, the Hearing Officer determined that (#14) Goudy was dishonest when she omitted the fact that she knew M.P. was on the phone when she slammed the M.P.'s door; (#15) Goudy was insubordinate when she did not follow the written warning and when she spoke with L.C. about the case after being instructed not

to by the HR Manager; and (#23) Goudy violated any work rule and/or policy against workplace violence when Goudy's actions towards L.F. and M.P. escalated from verbal, to harassing, to menacing.

{¶14} On November 7, 2018, the TCPD issued an Order of Removal, terminating Goudy's employment. The Order of Removal stated that Goudy engaged in insubordination, discourteous treatment of the public, dishonesty, violations of rules and other failure of good behavior when:

> [Goudy] disregarded written instructions for answering the telephone on June 15, 2018; dishonestly represented that [a secretary] was not on the phone; slammed [the secretary's] office door in anger; made inappropriate comments of a sexual nature directed at [another secretary]; violated a direct order not to discuss an ongoing investigation by talking with [another secretary about it]; and engaged in menacing behavior.

**Appeal to the State Personnel Board of Review**

{¶15} Goudy appealed her removal to the State Personnel Board of Review ("SPBR"). The administrative hearing was held before the Administrative Law Judge ("ALJ") on April 2 and 3, 2019. Multiple witnesses testified at the hearing. On May 14, 2019, the ALJ issued his Report and Recommendation. The Report sustained three charges of misconduct based on (1) discourteous or disrespectful treatment of M.P. by slamming her door; (2) failure to follow policy by deviating from the "answering the telephone" policy and by failing to give M.P. a written message about the call; and (3) discourteous or disrespectful treatment of L.F. by making a comment to her that was

foreseeably unwanted and engaging in a slight, but unwanted touching. The ALJ did not find that Goudy engaged in menacing, dishonesty, or insubordination.

{¶16} The ALJ found the preponderance of the evidence demonstrated that Goudy did not engage in prohibited conversation that violated the HR Manager's admonition Goudy could not speak with any witnesses to his investigation. The HR Manager testified that he believed Goudy violated his "gag order" by talking about the investigation with L.C. the night before he interviewed L.C. L.C. testified at the SPBR hearing that Goudy appeared at her home, crying and upset, and sat on L.C.'s porch for a half-hour. L.C.'s family, including her young grandchildren, was present when Goudy sat on the porch. L.C. said that Goudy did not speak because she was so upset. The ALJ found it reasonable that L.C. had knowledge about the two incidents before the gag order was issued because L.C. and Goudy were friends.

{¶17} Based on the ALJ's interpretation of the TCPD Personnel Manual, the ALJ found Goudy committed three Group I Offenses. The TCPD Personnel Manual adopted a system of progressive discipline that considered (1) the nature of the violation, (2) the employee's record of discipline/corrective action, and (3) the employee's record of performance and conduct. The ALJ noted that the TCPD never gave Goudy a performance evaluation during her entire career. Accordingly, the ALJ considered Goudy's long service generally good or satisfactory as to the employee's record of performance and conduct. Based on the Group I Offenses and the progressive disciplinary system, the ALJ recommended that Goudy's removal be modified to a ten-day suspension. The ten-day suspension represented the maximum three-day

suspension for each offense plus an extra day of suspension for committing multiple offenses in a short period of time.

{¶18} Goudy and the TCPD filed written objections to the Report and Recommendation to the SPBR. On August 28, 2019, a three-member panel of the SPBR held an oral hearing on the parties' objections.

{¶19} On September 18, 2019, the SPBR overruled the parties' objections and adopted the Report and Recommendation that Goudy's removal be modified to a ten-day suspension pursuant to R.C. 124.03 and 124.34. In its Order, the SPBR supported its decision with the following statement relevant to this appeal:

> However, Appellant was a 22-year employee whose cognizable discipline consisted of a single written reprimand. We also note that the Public Defender, a 29-year employee himself, hired Appellant and he was ultimately responsible for her training and performance. Yet, the Public Defender's office never completed a performance evaluation of Appellant during her 22 years of service. Thus, we must find that Appellant's lengthy service and lack of serious active discipline serve to mitigate against a more punitive action by Appellee.

### Appeal to the Court of Common Pleas

{¶20} On October 2, 2019, the TCPD filed a Notice of Appeal of the September 18, 2019 SPBR Order with the Tuscarawas County Court of Common Pleas.

{¶21} On November 13, 2019, the trial court issued a judgment entry acknowledging a Notice of Appeal of Administrative Order was filed by the TCPD on October 2, 2019. The trial court ordered the SPBR, pursuant to R.C. 119.12(I), to certify

and file the complete record of the administrative proceedings within 30 days after the receipt of the Notice of Appeal. After the certification and filing of the complete record, the trial court would issue further orders as required by R.C. 119.12.

{¶22} On October 30, 2019, Shane G. Trace, SPBR Program Administrator, filed a notice with the Clerk of Courts stating "[e]nclosed please find the complete record of the proceedings before the State Personnel Board of Review in the appeal of Tuscarawas County Public Defender v. Kristy Goudy. This is to certify that the record consists of the enclosed proceedings, exhibits, miscellaneous documents, and transcript. Documents are presented in reversed chronological order."

{¶23} The trial court held a pretrial conference on January 6, 2020. The pretrial order, filed on January 8, 2020, set a briefing schedule. The TCPD's memorandum of law was due on February 6, 2020, Goudy's memorandum of law was due on March 9, 2020, and the reply memorandum was due on March 24, 2020.

{¶24} On January 30, 2020, Lisa Reid, assistant attorney general representing the SPBR, sent an email to the trial court stating the SPBR had failed to transcribe one day of the administrative hearing. It would transcribe the missing day and file it on or before February 14th.

{¶25} On January 31, 2020, the TCPD filed a "Motion for Judgment in Favor of Appellant to Vacate the Order of the State Personnel Board of Review." In the motion, TCPD stated it had requested copies from the SPBR of all the transcripts that SPBR had filed with the trial court when it certified the record. The SPBR provided the TCPD with transcripts for April 2, 2019, the first day of the administrative hearing, and August 28, 2019, the hearing on the parties' objections. The SPBR did not file a transcript for the

second day of the administrative hearing, held on April 3, 2019. The second day of the administrative hearing included the testimony of Nicole Stephen, the last witness for the TCPD's case-in-chief, and the entirety of Goudy's case-in-chief, where she and her witness, L.C. testified. The TCPD contacted the SPBR on January 29, 2020 regarding the missing April 3, 2019 transcript. In response, the TCPD (and the trial court) received the January 30, 2020 email from Lisa Reid, quoted above.

{¶26} The TCPD argued the SPBR failed to prepare and certify the complete record in compliance with R.C. 119.12(I), thereby placing a mandatory duty on the trial court to find in favor of the TCPD, the party adversely affected. It argued because the SPBR failed to certify the complete record, the TCPD did not need to show prejudice. In the alternative, if the trial court determined a showing of prejudice was necessary, the TCPD was prejudiced because the record evidence necessary for the trial court to dispose of the appeal was not certified to the court, the certification of the record was completed at the TCPD's expense, and the SPBR's omission necessitated a delay in the parties' briefing schedule, which potentially exposed TCPD to additional back pay liabilities and interest if the trial court affirmed the Order.

{¶27} The April 3, 2019 transcript was filed with the Clerk of Courts on February 6, 2020.

{¶28} On February 7, 2020, the SPBR filed a Notice of Appearance, Memorandum in Opposition to the TCPD's Motion for Judgment, and Motion for Leave to File Excerpt of Administrative Record Out of Rule. The SPBR stated the April 3, 2019 transcript was omitted from the certified record due to an unspecified clerical error. Goudy also filed a Memorandum in Opposition, Motion for Leave to Join Additional Party, and

Motion for Leave to File Additional Portion of Record. The SPBR and Goudy argued the SPBR substantially complied with R.C. 119.12(I) when it certified the record. The omission of the transcript was a clerical error, which did not prejudice the TCPD. Goudy filed a supplemental memorandum on February 12, 2020.

{¶29} The TCPD filed replies to the motions for joinder, arguing the SPBR was not a proper party to the administrative appeal. Goudy filed a response and included the affidavit of Shane Trace, the SPBR Program Administrator. Trace averred that in his capacity as Program Administrator, he prepares, files, and certifies the administrative record developed by the SPBR to the Courts of Common Pleas. He stated that due to a "clerical error" by his office, "a third day of transcript before the SPBR was inadvertently omitted from the October 30, 2019 filing."

{¶30} The trial court held an oral hearing on the motions on March 9, 2020.

{¶31} The trial court issued its judgment entry on April 27, 2020. It first denied the motion of the SPBR and Goudy to join the SPBR as a party to the administrative appeal. It next analyzed whether the failure to file the April 3, 2019 transcript violated R.C. 119.12(I), necessitating judgment in favor of the TCPD. The trial court found that when the SPBR was notified of the missing transcript on January 29, 2020, it filed the transcript eight days later on February 6, 2020. The court looked at the briefing schedule it had set. As of January 9, 2020, the matter was not scheduled for an oral hearing until April 27, 2020. It found the "late filing of a portion of the written transcript on 2/6/2020, may have resulted in a modified briefing schedule; however, the late filing alone would not have necessitated a delay of the overall disposition of this case." (Judgment Entry, Apr. 27, 2020). As of February 6, 2020, the trial court had the complete record, including the April

3, 2019 transcript. The trial court therefore concluded the TCPD had not been prejudiced by the late filing of a portion of the written transcript. It denied the motion for judgment filed by the TCPD and granted the motion for leave to file an additional portion of the record.

{¶32} The court set a new briefing schedule, which was to be completed by July 3, 2020. The trial court held an oral hearing on the merits of the administrative appeal on August 24, 2020.

{¶33} On September 16, 2020, the trial court issued its judgment entry affirming the Order of the SPBR that modified Goudy's removal to a ten-day suspension.

### First Appeal

{¶34} The TCPD appealed the trial court's September 16, 2020 judgment entry to this Court, raising the following Assignments of Error:

I. THE COMMON PLEAS COURT ERRED IN FINDING THAT THE TUSCARAWAS COUNTY PUBLIC DEFENDER WAS NOT ENTITLED TO JUDGMENT UNDER R.C. §119.12(I) AS A RESULT OF THE FAILURE OF THE STATE PERSONNEL BOARD OF REVIEW TO CERTIFY TIMELY A COMPLETE RECORD OF ITS PROCEEDINGS.

II. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER OF SPBR, TO THE EXTENT IT DETERMINED THAT KRISTY GOUDY WAS NOT GUILTY OF THE ADMINISTRATIVE CHARGE OF INSUBORDINATION FOR VIOLATING AN ORDER NOT TO DISCLOSE DETAILS OF TUSCARAWAS COUNTY'S ADMINISTRATIVE INVESTIGATION TO A WITNESS.

III. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER OF THE SPBR, TO THE EXTENT THAT SPBR RELIED IMPROPERLY ON AN EXTRA-STATUTORY REQUIREMENT TO CONDUCT PERFORMANCE EVALUATIONS.

{¶35} In the TCPD's first Assignment of Error, it argued the trial court erred when it did not find that the SPBR failed to timely certify a complete record of the administrative proceedings to the trial court. Pursuant to R.C. 119.12(I), the SPBR has 30 days to prepare and certify to the court a complete record of the administrative proceedings. If the agency fails to comply with the 30-day requirement, the court "upon motion" is "to enter a finding in favor of the party adversely affected." R.C. 119.12(I). Upon our analysis of R.C. 119.12(I) and Ohio Supreme Court precedent, we sustained the TCPD's first Assignment of Error in *Tuscarawas County Public Defender v. Goudy*, 5th Dist. Tuscarawas No. 2020 AP 10 0023, 2021-Ohio-1754. We determined the second and third Assignments of Error were moot.

{¶36} Goudy appealed our decision to the Ohio Supreme Court and it accepted jurisdiction. 164 Ohio St.3d 1431, 2021-Ohio-3091, 173 N.E.3d 508. In *Goudy v. Tuscarawas County Public Defender*, 2022-Ohio-4121, -- N.E.3d --, the Ohio Supreme Court clarified its prior interpretations of R.C. 119.12(I) to hold the phrase "adversely affected" as used in R.C. 119.12(I) imposes a prejudice requirement. *Id.* at ¶ 3. It found that the TCPD did not show it had been prejudiced, reversing our decision. *Id.* The matter was remanded to this Court to consider the TCPD's second and third Assignments of Error. *Id.*

**Appeal Upon Remand**

{¶37} Pursuant to the Ohio Supreme Court's reversal and remand, the following two Assignments of Error presented by the TCPD are ripe for our review:

II. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER OF SPBR, TO THE EXTENT IT DETERMINED THAT KRISTY GOUDY WAS NOT GUILTY OF THE ADMINISTRATIVE CHARGE OF INSUBORDINATION FOR VIOLATING AN ORDER NOT TO DISCLOSE DETAILS OF TUSCARAWAS COUNTY'S ADMINISTRATIVE INVESTIGATION TO A WITNESS.

III. THE COMMON PLEAS COURT ERRED IN AFFIRMING THE ORDER OF THE SPBR, TO THE EXTENT THAT SPBR RELIED IMPROPERLY ON AN EXTRA-STATUTORY REQUIREMENT TO CONDUCT PERFORMANCE EVALUATIONS.

**ANALYSIS**

**SPBR Standard of Review**

{¶38} The General Assembly granted adjudicatory power to the State Personnel Board of Review ("SPBR") pursuant to R.C. 124.03 and 124.34. Pursuant to those statutes, the board is authorized to hear an employee's appeal from an appointing authority's removal order and to "affirm, disaffirm, or modify" the order. In enacting the statutes, the General Assembly granted the board broad powers to review an appointing authority's decision and to disaffirm an employee's discharge not only when the appointing authority acted arbitrarily, unreasonably, or unlawfully, but also when the board finds in an independent review that the decision regarding discharge is improper or

unnecessary. *State ex rel. Ogan v. Teater*, 54 Ohio St.2d 235, 245, 375 N.E.2d 1233 (1978), reaffirmed *Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990); *Ohio State Univ. v. Kyle*, 10th Dist. Franklin No. 06AP–168, 2006-Ohio-5517, at ¶ 23. *See also Beeler v. Franklin Cty. Sheriff*, 67 Ohio App.3d 748, 752, 588 N.E.2d 879 (10th Dist.1990) [stating "[c]ourts have interpreted R.C. 124.03 to provide great latitude to the [board] to alter decisions of appointing authorities"].

{¶39} Upon review of the factors underlying an appointing authority's removal order, the SPBR has the authority to affirm the adjudication, but may "modify" the punishment. (R.C. 124.03 and 124.34, construed.) *Maiden v. Fayette Cty. Bd. of Retardation & Dev. Disabilities*, 16 Ohio App.3d 196, 475 N.E.2d 135 (12th Dist.1984). In the instant case, the SPBR affirmed some of the findings, but modified the punishment from removal to a ten-day suspension.

{¶40} If the SPBR changes the removal order of an appointing authority to one of suspension, the Court of Common Pleas of the employee's residence has jurisdiction to hear an appeal by the appointing authority. *See, Scott v. Reinier*, 60 Ohio App.2d 289, 396 N.E.2d 1041 (10th Dist.1978).

## Trial Court Standard of Review

{¶41} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. *Licking Cnty. Veterans Services Commission v. Holmes*, 5th Dist. Licking No. 19-CA-75, 2020-Ohio-3294, ¶ 19 citing *1st Class Driving Academy v. State*, 5th Dist. Knox No. 09CA000006, 2009-Ohio-5174, ¶ 22. Such evidence has been defined as follows: (1) "Reliable" evidence is dependable; that is, it

can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value." *Id.*, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).

{¶42} In determining evidentiary conflicts, the Ohio Supreme Court in *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980), directed courts of common pleas to give deference to the administrative resolution of such conflicts. The Supreme Court noted when the evidence before the court consists of conflicting testimony of approximately equal weight, the common pleas court should defer to the determination of the administrative body, which, acting as the finder of fact, had the opportunity to determine the credibility and weight of the evidence. *Conrad* at 111. *See also Jones*, 52 Ohio St.3d at 43, citing *Graziano v. Amherst Exempted Village Bd. of Edn.*, 32 Ohio St.3d 289, 293, 513 N.E.2d 282 (1987) [noting "due deference must be accorded to the findings and recommendations of the [ALJ] * * * because it is the [ALJ] who is best able to observe the demeanor of the witnesses and weigh their credibility"].

{¶43} When the evidence supports the SPBR's decision, the common pleas court must affirm the board's decision and has no authority to modify the penalty. *Ogan*, 54 Ohio St.2d 235; *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 163 N.E.2d 678 (1959); *Kyle*, 2006-Ohio-5517 at ¶ 27. Under such circumstances, the common pleas court may not substitute its judgment for that of the board. *Id.*, citing *Steinbacher v. Louis*, 36 Ohio App.3d 68, 520 N.E.2d 1381 (8th Dist.1987).

**Appellate Standard of Review**

{¶44} On appeal to this Court, our standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992). In reviewing the trial court's determination that the decision of the SPBR was arbitrary and not in accordance with law, this Court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680, 610 N.E.2d 562 (10th Dist.1992). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993), Justice Francis Sweeney discussed our standard of review as follows: "The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [administrative body], or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Renner v. Tuscarawas Cty. Bd. of Commrs.*, 5th Dist. Tuscarawas No. 2002AP100077, 2003-Ohio-405, ¶ 12, appeal not allowed, 99 Ohio St.3d 1412, 2003-Ohio-2454, 788 N.E.2d 648, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264 (1988).

{¶45} When reviewing the decision of the common pleas court as to factual matters, we are limited to determining whether the trial court abused its discretion in

determining whether the administrative decision is supported by reliable, probative, and substantial evidence. *Franklin Cty. Bd. of Commrs. v. State Emp. Relations Bd.*, 92 Ohio App.3d 585, 588, 636 N.E.2d 407 (10th Dist.1993). As to matters of law, however, we are not limited to an abuse-of-discretion standard, since the common pleas court does not exercise discretion as to such issues. *Westfall v. Ohio Dept. of Commerce*, 10th Dist. Franklin No. 93AP–1067, unreported, 1994 WL 21860 (Jan. 25, 1994). Instead, we must make our own determination of the law to be applied to the facts in the case. *Traub v. Warren Cty. Bd. of Commrs.*, 114 Ohio App.3d 486, 489, 683 N.E.2d 411 (10th Dist.1996), citing *Franklin Cty. Bd. of Commrs., supra.*

**II.**

{¶46} In its second Assignment of Error, the TCPD argues the trial court abused it discretion when it affirmed the SPBR's finding that Goudy did not engage in the Group III Offense of insubordination. We disagree.

{¶47} The July 27, 2018 Hearing Officer report found that Goudy engaged in the Group III Offense of insubordination by refusing to perform assigned work or to comply with written or verbal instruction of supervisors. The report stated that on July 9, 2018, Goudy was specifically notified by the HR Manager and in writing when she received the Notice of Administrative Leave that she was not to talk with anyone regarding the investigation. The Hearing Officer determined that Goudy chose to talk with L.C. outside of work about the investigation.

{¶48} The HR Manager testified at the April 2, 2019 SPBR hearing. He stated that he interviewed Goudy on July 9, 2018. (T. 145). Director Latanich had given him the Notice of Administrative Leave, which the HR Manager gave to Goudy after her interview.

He reviewed the Notice with her that stated she was not to discuss the interviews with anyone else. (T. 147). Goudy and the HR Manager both initialed the Notice. (T. 147-148).

{¶49} The HR Manager interviewed L.C. on July 10, 2018. When the HR Manager asked L.C. if she knew why she was there, L.C. said yes, because the night before L.C.'s interview, Goudy came to her home where they discussed what was really going on. L.C. said Goudy was emotional when she was there. (T. 148). The HR Manager testified that L.C. initiated the discussion and described the alleged workplace incidents to him, although L.C. had not been present for those incidents. (T. 149). Based on L.C.'s level of knowledge of the incidents and the similarities to Goudy's interview on July 9, 2018, the HR Manager concluded that Goudy discussed the incidents with L.C. and coerced L.C.'s testimony. (T. 150, 153).

{¶50} On cross examination, the HR Manager admitted that he did not ask L.C. if she knew about the workplace incidents prior to Goudy allegedly discussing it with her on July 9, 2018. (T. 158). The HR Manager admitted it was possible that because L.C. and Goudy were friends, they spoke about events going on in the office. (T. 159).

{¶51} L.C. testified at the April 3, 2019 SPBR hearing. L.C. testified that she and Goudy had been friends for 22 years. (T. 127, 128). On July 9, 2018 at 4:30 p.m., L.C. was sitting on the porch of her home with her husband, daughter, and two granddaughters, getting ready to go to dinner. (T. 116). While they were on the porch, Goudy stopped by the home, came onto the porch, and sat on the porch swing. She was crying and shaking. (T. 117). She told L.C. that she would not be at work tomorrow. (T. 117). L.C. said Goudy stayed for about thirty minutes and while she was there, L.C. and Goudy did not discuss anything. (T. 119). L.C.'s brother-in-law arrived at the home while

Goudy was sitting on the porch. (T. 121). One of L.C.'s granddaughters was crying because she had gotten in trouble. (T. 123).

{¶52} When asked how L.C. knew about the workplace incidents when she was not present to witness them, L.C. testified that Goudy and she discussed them after they occurred. Shortly after Goudy slammed the door, Goudy asked L.C. if she heard the door slamming. (T. 135).

{¶53} Goudy testified at the April 3, 2019 SPBR hearing that the Notice of Administrative Leave prevented her from discussing the investigation but did not prevent her from going to her friend's house. (T. 182). Goudy stopped by L.C.'s home because she was upset, and she could not tell her 85-year-old parents. (T. 183). She sat on the porch swing, crying hysterically, while holding L.C.'s crying granddaughter. (T. 183).

{¶54} The ALJ considered the alleged "gag order" violation in its May 14, 2019 Report and Recommendation. Weighing the testimony of the HR Manager and L.C., the ALJ found L.C.'s testimony that Goudy did not discuss the investigation with her on July 9, 2018 to be credible. The ALJ first found it was logical that because L.C. and Goudy testified as to their long-term friendship, the friends would contemporaneously discuss the workplace incidents, thereby giving L.C. knowledge of some of the incidents without her witnessing them. The ALJ next found that while the HR Manager truthfully testified as to his impressions and recollections of his investigation, L.C.'s testimony was more reliable based on the precise details regarding her interactions with Goudy. The ALJ stated:

> In contrast, [the HR Manager]'s contemporaneous document summary
> omits many facts that were elicited from [L.C.] during her testimony at the

record hearing. [The HR Manager]'s testimony and investigative summary is general. [The HR Manager] had to rely on his personal inferences from circumstantial evidence of motive, opportunity and his memory of hearsay. Though his suspicions are very reasonable, they do not constitute preponderant evidence of prohibited communication when compared with [L.C.]'s testimony.

(Report and Recommendation, May 14, 2019, page 8).

{¶55} The SPBR Board adopted the Recommendation. In its judgment entry affirming the SPBR Order, the trial court found that L.C. and Goudy discussed the workplace incidents at some point. The evidence in the record, however, supported the ALJ's finding that L.C. and Goudy did not discuss the workplace incidents after July 9, 2018. (Judgment Entry, Sept. 16, 2020, page 15).

{¶56} The TCPD's second Assignment of Error presents an evidentiary conflict -- whose testimony is to be believed as to what was said to whom and when? "[A] common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts." *Barr v. Lorain Cnty. Dept. of Job & Family Services*, 9th Dist. Lorain No. 19CA011542, 2020-Ohio-4344, 2020 WL 5360164, ¶ 20 quoting *Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 25575, 2012-Ohio-1175, at ¶ 33; *see also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980) ("[W]hen the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility.").

{¶57} In this case, the ALJ found L.C.'s testimony to be more credible when she testified that she knew about the incidents prior to July 9, 2018 and Goudy did not speak with her about the incidents when she came to her home on July 9, 2018. We agree that the HR Manager relied upon inferences to draw the conclusion that Goudy had spoken with L.C. on July 9, 2018 about the investigation. The HR Manager admitted that during her interview, he did not ask L.C. whether she knew about the workplace incidents before July 9, 2018. At the SPBR hearing, L.C. testified that she knew about the incidents before July 9, 2018. Upon this record and our limited standard of review as to evidentiary conflicts, we cannot say the trial court abused its discretion in declining to reverse the SPBR's determination that Goudy did not commit the Group III Offense of insubordination by communicating with L.C. about the investigation.

{¶58} The TCPD's second Assignment of Error is overruled.

**III.**

{¶59} The TCPD argues in its third Assignment of Error that the SPBR erred as a matter of law when it found the TCPD's failure to conduct a performance evaluation was part of its statutory consideration under R.C. 124.34. We disagree.

{¶60} R.C. 124.03(A)(1) enables the SPBR to hear appeals of classified employees from final decisions of appointing authorities relative to discharges. The SPBR may affirm, disaffirm, or modify the decisions of the appointing authorities or the director, as the case may be, and its decision is final. As we stated above, "courts have interpreted R.C. 124.03 to provide great latitude to the [board] to alter decisions of the appointing authorities." *Licking County Veterans Services Comm. v. Holmes*, 5th Dist. Licking No.

19-CA-75, 2020-Ohio-3294, ¶ 26 quoting *Beeler v. Franklin Cty. Sheriff*, 67 Ohio App.3d 748, 588 N.E.2d 879 (10th Dist.1990).

{¶61} R.C. 124.34 states in pertinent part:

(A) The tenure of every officer or employee in the classified service of the state and the counties, civil service townships, cities, city health districts, general health districts, and city school districts of the state, holding a position under this chapter, shall be during good behavior and efficient service. No officer or employee shall be reduced in pay or position, fined, suspended, or  removed, or have the officer's  or employee's longevity reduced or eliminated, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, unsatisfactory performance, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony while employed in the civil service. * * *

 * *

(B) * * * The board, commission, or trial board may affirm, disaffirm, or modify the judgment of the appointing authority. * * *

{¶62} The SPBR determined that Goudy had engaged in three Group I Offenses. Based on Goudy's violation of Group I Offenses and under its authority pursuant to R.C.

124.34, the SPBR modified Goudy's termination to a ten-day suspension. In so modifying Goudy's removal to a suspension, the ALJ Report and Recommendation reviewed the matter pursuant to the TCPD Personnel Manual, which adopted a system of progressive discipline. The system of progressive discipline considered (1) the nature of the violation, (2) the employee's record of discipline/corrective action, and (3) the employee's record of performance and conduct. The ALJ Report and Recommendation stated,

> It should be noted that TCPD never gave Goudy a performance evaluation during her entire career. Accordingly, Goudy's long service will generally be considered good or satisfactory for factor "3" within the Manual.

The SPBR Order likewise noted the TCPD's failure to complete a performance evaluation during Goudy's 22 years of service and that during her 22 years of service, she had only received one written reprimand. The SPBR Order concluded that Goudy's lengthy service and lack of serious active discipline served to mitigate against termination.

{¶63} In its appeal, the TCPD contends the SPBR impermissibly created a requirement that the appointing authority complete a performance evaluation of the classified employee for the SPBR to determine whether to affirm, disaffirm, or modify the judgment of the appointing authority. We disagree with the TCPD's interpretation of the SPBR's comment as to the lack of a performance evaluation and do not find that the SPBR created a requirement for a performance evaluation as part of its statutory review. Rather, we find the SPBR was noting the status of the evidentiary record in making its determination.

{¶64} The SPBR was tasked to determine whether the record supported the appointing authority's decision to terminate Goudy's service based on her violations of

the TCPD Personnel Manual. As part of its review, the SPBR considered the terms of the TCPD Personnel Manual. The Personnel Manual established a system of progressive discipline, which considered three elements including the employee's record of discipline/corrective action and the employee's record of performance and conduct. The SPBR noted that without the benefit of performance evaluations, the only evidence of Goudy's performance and conduct prior to the July 27, 2018 Hearing Officer report was the February 23, 2018 written warning and witness testimony. The SPBR utilized the system of progressive discipline outlined in the TCPD Personnel Manual to find the evidence of Goudy's 22-year employment without discipline/corrective action and no evidence that Goudy's performance and conduct was negative prior to the February 23, 2018 written warning weighed in favor of modifying her termination to a ten-day suspension.

{¶65} We do not find the SPBR or trial court erred because the SPBR's consideration of the lack of performance evaluations was based on the evidence in the record (or lack thereof) and not on statutory interpretation.

{¶66} The TCPD's third Assignment of Error is overruled.

## CONCLUSION

{¶67} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.